Todd C. Werts, Ariz. Bar No. 35380
LEAR WERTS LLP
103 Ripley Street
Columbia, MO 65201
Telephone: 573-875-1991
Facsimile: 573-279-0024
Email: werts@learwerts.com
Attorneys for Plaintiffs

In the United States District Court
District of Arizona
Phoenix Division

| | |
|---|---|
| Kathy Arrison and Tristan Smith, individually, and on behalf of a Class of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Walmart, Inc. and Wal-Mart Associates, Inc.,<br><br>Defendants. | Case No.<br><br>Jury Trial Demanded<br><br>Class Action |

## COMPLAINT

Plaintiffs Kathy Arrison and Tristan Smith, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, for their complaint against Defendants Walmart, Inc. and Wal-Mart Associates, Inc. (collectively, "Walmart"), hereby state as follows:

1. In the Spring of 2020, Walmart implemented a company-wide policy requiring its workers to undergo a mandatory COVID-19 screening each shift. Workers were instructed to arrive before their scheduled shift to complete the requisite questionnaire, screening, and body temperature scan.

2. Walmart's workers continue to work through the pandemic. And they put in the time necessary to comply with Walmart's COVID-19 policies so that the company's stores can remain in operation. But Walmart does not pay these employees for the time that the company requires of them. As a result, Walmart is unjustly enriched at the expense of its workers.

3. This lawsuit is brought as a Rule 23 class action under Arizona law to recover compensation owed to Plaintiffs and other similarly situated Walmart employees in the State of Arizona.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this controversy under 28 U.S.C. § 1332(d) as this case alleges a class action claim in which the matter in controversy exceeds $5,000,000 and most of the class members are citizens of a state different than the citizenship of the defendants.

5. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c), because Walmart is deemed a resident of the District of Arizona as it is subject to personal jurisdiction in this District. Venue in this division of the District of Arizona is proper because Walmart maintains multiple stores in the Phoenix Division of this Court and a substantial part of the events giving rise to this claim occurred in the Phoenix Division of this Court.

## PARTIES

6. Defendant Walmart Inc. f/k/a Wal-Mart Stores, Inc. is a Delaware corporation with its principal place of business located at 702 SW 8th Street, Bentonville, Arkansas 72716. Walmart Inc. is a citizen of Delaware and Arkansas.

7. Defendant Wal-Mart Associates, Inc. is a Delaware corporation with its principal place of business located at 702 SW 8th Street, Bentonville, Arkansas 72716. Wal-Mart Associates, Inc. is a citizen of Delaware and Arkansas.

8. Plaintiff Kathy Arrison is a resident and citizen of the State of Arizona and was employed as an hourly retail associate by Walmart at the Walmart store on Northsight Boulevard in Scottsdale, Arizona from February 2019 to November 2020.

9. Plaintiff Tristan Smith is a resident and citizen of the State of Arizona and was employed by Walmart as an hourly retail associate at the Walmart store on McKellips Road in Mesa, Arizona since December 2019.

2

GENERAL ALLEGATIONS

10. At last count, Walmart employed 33,618 workers in Arizona. *See* https://corporate.walmart.com/our-story/locations/united-states/arizona (last accessed Mar. 19, 2021).

11. The average wage for Walmart's workers in Arizona is $14.63. *Id.*

12. Walmart's footprint in Arizona consists of 84 Supercenters, 2 discount stores, 26 Neighborhood Markets, and 12 Sam's Clubs. *Id.*

13. Following the outbreak of the COVID-19 pandemic, Walmart implemented a company-wide policy requiring each of its hourly, non-exempt employees to undergo a physical and medical examination to check for symptoms of COVID-19 each shift. The examination was conducted on the premises of Walmart, was required by Walmart, and was necessary for each employee to perform his/her work for Walmart.

14. Walmart did not pay its employees for the time spent undergoing these required COVID-19 screenings.

15. Plaintiff Kathy Arrison worked for Walmart as an hourly, non-exempt employee. She was paid approximately $13.50 to $14.50 per hour during this time.

16. Plaintiff Tristan Smith worked for Walmart as an hourly, non-exempt employee. He was paid $12.90 per hour.

17. Starting in or about April 2020, Walmart required, and continues to require, its employees to arrive at its retail stores and fulfillment centers prior to the start of their scheduled shifts to participate in mandatory COVID-19 screening.

18. The screening process typically involves standing in a line with the other workers arriving for the beginning of the scheduled shift and waiting for the sole person designated by Walmart to take the temperature of each employee whose shift is about to start and then ask a series of questions related to each employees' health condition, such as whether they had trouble breathing, were coughing, had a runny nose, chest pain, and other questions regarding their health.

They were also asked questions such as whether the employee has travelled recently, whether the employee was exposed to someone with COVID-19, and other similar questions. If an employee passes the examination, the employee is also given a face mask and gloves that he/she must put on before entering the store. After entering the store, the employee then typically must walk to the opposite end of the store where the time clocks are located and is then allowed to clock-in for the day.

19. If an employee does not pass the initial examination, that employee is sent to a second examination. The employee is then asked a series of follow-up questions to identify whether the worker currently has symptoms of COVID-19 and poses a potential health hazard to the store and its customers. If the employee passes the second examination, the employee is then given a face mask and gloves and permitted to enter the store and eventually clock-in for the day. If not, the employee is not permitted to continuing working that day and is not permitted to clock in.

20. Walmart employees, including Ms. Arrison and Mr. Smith, are not allowed to clock-in until after they undergo the mandatory COVID-19 screening.

21. Walmart's managers and supervisors instructed their employees, including Ms. Arrison and Mr. Smith, to arrive several minutes prior to their scheduled shift in order to have enough time to wait in line, complete the required screening, enter the store, and still clock-in at or just before the employees' scheduled shift. Employees were subjected to, and received, discipline under Walmart's attendance policy if they were unable to clock-in on-time regardless of the required COVID-19 screening.

22. Regardless of how long the employee had been on-site for the COVID-19 screening, Walmart employees were not allowed to clock-in sooner than approximately eight (8) minutes before their scheduled shift.

23. The amount of time it takes to wait in line and undergo the COVID-19 examination is approximately 10 minutes to 15 minutes on average. This amount of

time could be longer depending on the number of other Walmart employees in line for the COVID-19 screening.

24. The time spent by Walmart's employees arriving early to wait in line and then undergo the COVID-19 screening should have been paid by Walmart because it constitutes compensable time worked. During this time, Plaintiffs were subject to the control of Walmart.

25. Plaintiffs were required to follow Walmart's instructions while awaiting, and during, the COVID-19 screening. Walmart required every employee to complete the COVID-19 screening; it was not optional. Indeed, Plaintiffs faced the threat of discipline, including possible termination, if they failed to comply.

26. Additionally, Plaintiffs were confined to the premises of Walmart when they waited for the examination, during the examination, and were not permitted to leave the premises after the examination before being permitted to clock in.

27. Moreover, Walmart compels its employees to perform specific tasks during the examination. They must answer questions, submit to having their temperature taken, and wear masks and gloves.

28. In other words, Walmart directs, commands, and restrains its employees during the COVID-19 examination process, preventing them from using that time effectively for their own purposes.

29. The COVID-19 screenings were also necessary to the principal work performed by Plaintiffs and were necessary to ensure a safe environment for Walmart's customers. The COVID-19 examinations were undertaken on Walmart's premises primarily for the benefit of Walmart.

30. The COVID-19 examinations are intended to ensure that the virus does not infect Walmart's workers or customers. If Walmart did not have the COVID-19 screening, workers could unintentionally bring the virus into the Walmart facilities causing a mass breakout of the virus infecting hundreds to thousands of other

workers and customers of Walmart. Thus, the examinations were necessary to ensure that the virus did not disrupt Walmart's business operations.

31. The job duties of all Walmart hourly employees involve interaction with the public, as explained by Walmart in its own job descriptions:

a) Stocking and Unloading: "Stocking, backroom, & receiving associates work to ensure customers can find all of the items they have on their shopping list. Depending on the shift you work, your job could include moving inventory in the backroom, unloading trucks, or helping customers while stocking shelves." Walmart Careers, *Stocking & Unloading*, https://careers.walmart.com/us/jobs/SU101627565CP-stocking-unloading (last accessed Mar. 19, 2021).

b) Food & Grocery: "Duties and Responsibilities – Help customers find the products they are looking for." Walmart Careers, *Food & Grocery*, https://careers.walmart.com/us/jobs/FG101607675CP-food-grocery (last accessed Mar. 19, 2021).

c) Cashier & Front End Services: "You might be the first, last, and sometimes only associate that customers interact with. That's why it's so important to smile, greet, and thank each and every customer." Walmart Careers, *Cashier & Front End Services*, https://careers.walmart.com/us/jobs/FE101604359CP-cashier-front-end-services (last accessed Mar. 19, 2021).

d) Auto Care Center: "Duties and Responsibilities – Ensure customers have a great first and last impression." Walmart Careers, *Auto Care Center*, https://careers.walmart.com/us/jobs/VCC101601043CP-auto-care-center (last accessed Mar. 19, 2021).

e) Fuel Station: "Duties and Responsibilities – Acknowledge and greet customers with a smile." Walmart Careers, *Fuel Station*, https://careers.walmart.com/us/jobs/FS101610985CP-fuel-station (last accessed Mar. 19, 2021).

      f)      General Merchandise: "Duties and Responsibilities – … Smile, greet, and thank customers with a positive attitude." Walmart Careers, *General Merchandise*, https://careers.walmart.com/us/jobs/GM101614301CP-general-merchandise (last accessed Mar. 19, 2021).

      g)      Online Orderfilling and Delivery: Duties and Responsibilities – Acknowledge and greet customers with a smile[;] [a]nswer customer questions." Walmart Careers, *Online Orderfilling and Delivery*, https://careers.walmart.com/us/jobs/OOD101624249CP-online-orderfilling-and-delivery (last accessed Mar. 19, 2021).

32.    As a result, the COVID-19 screenings were integral and indispensable to the principal activity and primary job duty performed by Plaintiffs: to serve and assist Walmart customers.

33.    Walmart knew or should have known that its employees should be paid for the time they were required to arrive early and participate in the mandatory COVID-19 screenings.

34.    Arizona statutes provide that "'Hours worked' includes all time an employee is employed.'" Ariz. Rev. Stat. § 23-350.4

35.    Courts have recognized that "'hours worked' is defined under Arizona law as 'all hours for which an employee covered under the Act is employed and required to give the employer, including *all time during which an employee is on duty or at a prescribed work place and all time the employee is suffered or permitted to work*.'" *In re Amazon.Com, Inc. Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, 905 F.3d 387, 404–05 (6th Cir. 2018) (quoting Ariz. Admin. Code R.20-5-1202(9)); *accord Roberts v. State,* __ P.3d __, 2021 WL 786615, at *5 (Ariz. Ct. App. Mar. 2, 2021) (recognizing the quoted regulation applies "to wage claims by private employees").

36.    Further, courts have recognized that "'on duty,' means 'time spent working or waiting that the employer controls and that the employee is not

7

permitted to use for the employee's own purpose.'" *In re Amazon.com FLSA Litig.*, 905 F.3d at 404–405 (quoting Ariz. Admin. Code R.20-5-1202(12)); *accord Roberts*, 2021 WL 786615, at *5.

37. Arizona's regulations are consistent with those of the United States Department of Labor. *See Substantive Policy Statement Regarding Interpretation of "Hours Worked" for Purposes of the Arizona Minimum Wage Act* (Ariz. Ind. Comm'n Aug. 16, 2007) https://www.azica.gov/sites/default/files/Minimum%2520Wage%2520-%2520Hours%2520Worked.pdf (last accessed Mar. 19, 2021) (explaining "the Industrial Commission of Arizona will be guided by and rely upon 29 CFR Part 785"). The U.S. DOL has issued regulations and opinion letters stating that examinations, like the COVID-19 screenings at issue here, constitute time that should be paid for by employers. *See* 29 CFR § 785.43; DOL Wage and Hour Opinion Letter, 1998 WL 852652 (Jan. 26, 1998) ("Generally, whenever an employer imposes special requirements or conditions that an employee must meet before commencing or continuing productive work, the time spent in fulfilling such special conditions is regarded as indispensable to the performance of the principal activity the employee is hired to perform.").

38. Walmart has demonstrated its knowledge that the time spent in the COVID-19 screenings should be compensated in that in or about November 2020, Walmart began adding an additional 5 minutes to each employee's daily recorded time to partially compensate for the screenings. This 5-minute addition is insufficient to fully compensate the affected Walmart employees for the time actually spent in the COVID-19 screenings. Further, no effort was made by Walmart to reimburse employees for any of the time they spent in COVID-19 screenings that occurred prior to November 2020.

## CLASS ACTION ALLEGATIONS

39. Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23 on her own behalf and as class representative on behalf of the following:

> Persons who are currently working or previously worked for Walmart as an hourly employee in a Walmart facility in Arizona and participated in required pre-shift COVID-19 screenings.

40. This class numbers in the thousands of persons. As a result, joinder of all class members in a single action is impracticable. Class members may be informed of the pendency of this class action through a variety of means, including but not limited to, direct mail, email, jobsite posting, and website posting.

41. There are questions of fact and law common to the class that, under Arizona state law, predominate over any questions affecting only individual members. The questions of law and fact common to the class arising from Walmart's actions include, without limitation, the following:

   a) whether Walmart instituted a policy requiring its employees to arrive at the jobsite early for a pre-shift COVID screening;

   b) whether Walmart paid for the time spent by its employees to comply with Walmart's COVID screening policy; and

   c) whether Walmart was unjustly enriched by failing to pay its employees for that time.

42. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

43. Plaintiffs' claims under Arizona state law are typical of those of the class in that class members have been employed in the same or similar positions as Plaintiffs and were subject to the same or similar practices as Plaintiffs.

44. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Walmart has acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual

class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Walmart, and/or substantially impair or impede the ability of class members to protect their interests.

45. Plaintiffs are adequate representatives of the Arizona class because they are members of the class and their interests do not conflict with the interests of the members of the class they seek to represent. The interests of the members of the class will be fairly and adequately protected by Plaintiffs and their undersigned counsel. Counsel are experienced in the litigation of civil matters, including the prosecution of complex wage and hour, employment, and class action cases.

46. Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. It would be impracticable and undesirable for each member of the class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

## COUNT I
## ARIZONA WAGE LAW

47. Plaintiffs re-allege the allegations set forth above in paragraphs 1–46.

48. Walmart's failure to pay the correct amount of hourly wages permits a civil suit to recover treble the amount of wages due to Plaintiffs under Ariz. Rev. Stat. §§23-351 and 23-355.

49. Plaintiffs only seek unpaid hourly wages. Plaintiffs do not seek under this Count premium pay based on the fact that they worked more than 40 hours in any given workweek.

WHEREFORE, Plaintiffs demand judgment against Walmart and pray this Court:

a. certify the claim set forth above as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b. award Plaintiffs Kathy Arrison, Tristan Smith, and all similarly situated employees damages in an amount that is treble the amount of unpaid wages pursuant to Ariz. Rev. Stat. § 23-355;

c. award Plaintiffs Kathy Arrison, Tristan Smith, and all similarly situated employees pre-judgment and post-judgment interest as provided by law; and

d. award Plaintiffs Kathy Arrison, Tristan Smith, and all similarly situated employees such other relief as the Court deems fair and equitable.

## COUNT II
## RECORD KEEPING VIOLATION

50. Plaintiffs re-allege the allegations set forth above in paragraphs 1–46.

51. Ariz. Rev. Stat. § 23-364 permits a private party to bring a civil action for violation of the record keeping requirements of Ariz. Admin. Code § R20-5-1210, *et seq*.

52. Walmart has violated and continues to violate Arizona's record keeping requirements by failing to keep timecards for each of its hourly employees that record the correct daily starting and stopping time for each individual employee, the actual hours worked each workday, and the total hours worked each workweek.

53. Walmart's above-described violation of Arizona's record keeping requirements was willful, in that it acted with reckless disregard of the law.

54. As a result, Walmart is liable to its Arizona employees for civil penalties in the amount of at least $250 for the first violation and at least $1,000 for each subsequent violation.

WHEREFORE, Plaintiffs demand judgment against Walmart and pray this Court:

a. certify the claim set forth above as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

  b. award Plaintiffs Kathy Arrison, Tristan Smith, and all similarly situated employees civil penalties in the amount of at least $250 for the first violation and at least $1,000 for each subsequent violation;

  c. award Plaintiffs Kathy Arrison, Tristan Smith, and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

  d. award Plaintiffs Kathy Arrison, Tristan Smith, and all similarly situated employees reasonable attorney's fees and costs of suit; and

  e. award Plaintiffs Kathy Arrison, Tristan Smith, and all similarly situated employees such other relief as the Court deems fair and equitable.

### COUNT III
### UNJUST ENRICHMENT / QUANTUM MERUIT

55. Plaintiffs re-allege the allegations set forth above in paragraphs 1–46.

56. Walmart has benefited from the labor Plaintiffs have expended participating in Walmart's mandated COVID-19 screenings without paying its employees for all of the time spent arriving early to their assigned shifts in order to complete the mandated COVID-19 screening.

57. Walmart has been enriched by not paying its employees for all time its employees were at their prescribed place of work in order to complete COVID-19 screenings before the beginning of their scheduled shifts.

58. Plaintiffs have been impoverished by Walmart's failure to pay its employees for all time its employees were at their prescribed place of work in order to complete COVID-19 screenings before the beginning of their scheduled shifts.

59. As described above, there is a connection between Walmart's enrichment and Plaintiffs' impoverishment because of Walmart's failure to pay its employees for all time its employees were at their prescribed place of work in order to complete COVID-19 screenings before the beginning of their scheduled shifts.

60. Walmart was aware or should have been aware that it was receiving the benefit of this unpaid work at the time the work was being performed and accepted and retained that benefit without paying fair compensation for the same.

61. Walmart's acceptance and retention of the benefit of the employees' unpaid labor was unjust and inequitable and resulted in Walmart being unjustly enriched.

62. There is no justification for Walmart to have failed to pay its employees for all time its employees at their prescribed place of work in order to complete COVID-19 screenings before the beginning of their scheduled shifts.

63. Plaintiffs recognize they may not double-recover for their unpaid wages. Accordingly, should Plaintiffs prevail on Count I herein for all wages and damages claimed, then they would not be entitled to recover under this Count III. However, should Plaintiffs not prevail on their Count I and recover for all wages and damage claimed, then they will have had no legal remedy for their harm.

WHEREFORE, Plaintiffs demand judgment against Walmart and pray this Court:

a. certify the claim set forth above as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b. order Walmart to disgorge the value of its ill-gained benefits to Plaintiffs Kathy Arrison, Tristan Smith, and all similarly situated employees;

c. award Plaintiffs Kathy Arrison, Tristan Smith, and all similarly situated employees pre-judgment and post-judgment interest as provided by law; and

d. award Plaintiffs Kathy Arrison, Tristan Smith, and all similarly situated employees such other relief as the Court deems fair and equitable.

DEMAND FOR JURY TRIAL

Plaintiffs hereby request a trial by jury of all issues so triable.

Respectfully submitted,

LEAR WERTS LLP

/s/ Todd C. Werts
Todd C. Werts, Ariz. Bar No. 35380
Bradford B. Lear, *pro hac vice forthcoming*
Anthony J. Meyer, *pro hac vice forthcoming*
103 Ripley Street
Columbia, MO 65201
Telephone:  573-875-1991
Facsimile:  573-279-0024
Email:  lear@learwerts.com
Email:  werts@learwerts.com
Email:  meyer@learwerts.com

Attorneys for Plaintiffs