WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathy Arrison, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Walmart Incorporated, et al.,<br><br>    Defendants. | No. CV-21-00481-PHX-SMB<br><br>**ORDER** |

Before the Court is Defendants Walmart, Inc. and Wal-Mart Associates' (collectively "Walmart") Motion for Summary Judgment (Doc. 56). Plaintiffs Kathy Arrison and Tristan Smith, individually, and on behalf of a Class of others similarly situated, filed a Response (Doc. 66), and Defendants a Reply (Doc. 71).[1] The Court held oral argument on June 28, 2023. After considering the parties' arguments and the relevant law, the Court will grant in part Defendants' Motion for the reasons discussed below.

**I.  BACKGROUND**

In response to COVID-19 and guidance from federal, state, and local public health agencies, Walmart began screening employees for COVID-19 symptoms in its Arizona stores on April 10, 2020 through February 28, 2022. (Doc. 56 at 7.) Before the start of every shift, associates underwent a multi-step screening process as a prerequisite to entering the store. (*Id.* at 8.) After screening, an associate could leave the store and return without screening again for that day. (*Id.*)

---

[1] The Court has also considered the parties' briefings in Plaintiffs' Motion for Rule 23 Class Certification (Docs. 55, 65, 72).

Associates would first scan their badge or record their employee identification number. (*Id.*) Screeners would then ask several "yes" or "no" questions about symptoms and COVID-19 exposure before checking an associate's temperature using a handheld digital thermometer. (*Id.*) In May 2020, Walmart began allowing Arizona associates to complete the screening questions on their mobile devices using the "Me@Walmart" application. (*Id.*) Walmart instructed associates that any self-screening on their devices was to be done within 15 minutes of their scheduled shift's start time. (*Id.*) Upon arriving to the screening table, a self-screener showed their device's completion screen and then underwent an on-site temperature check. (*Id.*)

Upon completion of either screening method, an associate was permitted to enter the building where they could then clock in at the appropriate time. (*Id.*) Associates could clock in using a timeclock or a computer program available on terminals throughout the store. (*Id.*) Beginning in April 2021, Walmart also allowed associates to clock in using the Me@Walmart application on their mobile devices. (*Id.* at 3–4.) Walmart did not require associates to immediately clock in if they arrived early for their shift. (*Id.* at 4.) Associates could shop, wait in the breakroom, or engage in other non-work activities before clocking in. (*Id.*)

Walmart alleges that its policy "was to pay associates for all time they spent undergoing COVID-19 screening, including any time waiting in line." (*Id.*) Starting April 11, 2020, Walmart began adding five minutes to every non-exempt associate's daily hours to compensate for any time it took to undergo the screenings. (*Id.*) Walmart alleges that Plaintiffs received an additional five minutes of pay for every shift the policy was in effect. (*Id.*) If the screening process exceeded five minutes, Walmart asked associates to adjust their time entries accordingly to receive payment. (*Id.*)

Walmart alleges that it posted signs at the screening locations stating: "If your health screening (including time in line) takes longer than 5 minutes, please submit an [electronic time adjustment] for any additional time." (*Id.*) Even if screenings lasted under five minutes, associates were paid an extra five minutes for every shift the policy was in effect.

(*Id.*)  Associates could submit time adjustments through the store timeclock, their mobile device, a store computer terminal, or a paper form.  (*Id.*)

Plaintiffs originally sought damages for failing to pay for COVID screening time and post-screening time (the time between completion of screening and clocking in).  Now Plaintiffs only seek damages for the failure to pay post-screening time during the time period of April 10, 2020 to February 27, 2020, and COVID screening time only for April 10, 2020.  Now, Walmart moves for summary judgment on Plaintiffs' Arizona Wage Act ("AWA"), record keeping, and unjust enrichment claims.  (*Id.* at 7.)

## II. LEGAL STANDARD

A Court may rule on a motion for summary judgment before a motion for class certification.  *Wright v. Schock*, 742 F.2d 541, 543–44 (9th Cir. 1984).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Facts are material when the factual issue may affect the outcome of the case under the governing substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Factual disputes are genuine if the evidence allows a reasonable jury to return a verdict for the non-moving party.  *Id.*  At the summary judgment stage, the Court believes the non-moving party's evidence, *see id.*, and construes disputed facts in the light most favorable to Plaintiffs.  *See Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).  If "the evidence yields conflicting inferences [regarding material fact], summary judgment is improper, and the action must proceed to trial." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002).  Still, the non-moving party bears the burden of proof, so summary judgment is warranted if Plaintiffs fail "to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Plaintiffs cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

III. **DISCUSSION**

    A. **AWA Claim (Count I)**

Arizona law requires an employer to pay its employees all wages due. A.R.S. § 23-355. "'Wages'" means nondiscretionary compensation due an employee in return for labor or services rendered by an employee for which the employee has a reasonable expectation to be paid whether determined by a time, task, piece, commission or other method of calculation." A.R.S. § 23-350(7). Plaintiffs' AWA claim is predicated on the argument that Walmart was required to pay its associates pursuant to Ariz. Admin. Code § R20-5-1202 which states in part that:

> "[H]ours worked" means all hours for which an employee covered under the Act is employed and required to give to the employer, including all time during which an employee is on duty or at a prescribed work place and all time the employee is suffered or permitted to work.

Plaintiffs argue Walmart required uncompensated time by using "a fixed sum to pay its workers for standing in line and completing the COVID screenings, but paid nothing for the time after the screenings were completed and until the employees were able to eventually clock in." (Doc. 66 at 9.) They argue Walmart therefore violated Ariz. Admin. Code § R20-5-1202 because that time was spent "at a prescribed work place" and should have been paid accordingly. (Doc. 66 at 9–10.) Moreover, Plaintiffs argue the same is true for April 10, 2020, when Walmart tendered no pay for the screenings. (*Id.* at 10.)

Walmart presents three arguments in its request for summary judgment on Plaintiffs' AWA claim. First, Walmart argues Plaintiffs had no reasonable expectation of additional pay beyond the five minutes provided during screenings. Second, Walmart argues Plaintiffs cannot prove Walmart had any knowledge about the alleged unpaid time because Plaintiffs never adjusted their time records or alerted the company per Walmart's policy. Finally, Walmart argues Plaintiffs are not entitled to treble damages because there is a good faith dispute over whether Walmart owes any unpaid wages.

    1. <u>Reasonable Expectation Requirement</u>

Walmart argues that Plaintiffs' AWA claim fails because Plaintiffs cannot prove any "reasonable expectation" of payment under A.R.S. § 23-355(A) for any day screenings

took place. (Doc. 56 at 14–16.) Section 23-355(A) states: "Except as provided in subsection B of this section, if an employer, in violation of this chapter, fails to pay wages due any employee, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages." As discussed, "wages" is defined as "nondiscretionary compensation due an employee in return for labor or services rendered by an employee *for which the employee has a reasonable expectation to be paid* whether determined by a time, task, piece, commission or other method of calculation." A.R.S. § 23-350(7) (emphasis added). Walmart contrasts these AWA statutes with A.R.S. § 23-362, et seq.—Arizona's minimum wage statutes—which do not include a similar "reasonable expectation" qualification.

A "reasonable expectation" may be defined contractually either (1) expressly, (2) by an "implied contract between the parties based upon their past dealings," *Zavaleta v. OTB Acquisition LLC*, No. CV-19-04729-PHX-JAT, 2021 WL 824419, at *5 (D. Ariz. Mar. 4, 2021), or (3) by an employer's "policy or practice [to pay] such compensation." *Morgan v. Freightliner of Ariz., LLC*, No. CIV 16-498, 2017 WL 2423491-TUC-CKJ, at *7 (D. Ariz. June 2, 2017).

To support this, they cite to evidence that since April 11, 2020, Plaintiffs received an additional five minutes of pay for every screening, but Plaintiffs never submitted time adjustments for any screenings, nor did Plaintiffs alert management about a possible underpayment. (Doc. 56 at 16.) The Court notes that Walmart focused all of its arguments on the COVID screening time, which Plaintiffs abandoned for all dates except April 10, 2020. Therefore, they have put forth no argument to support a request for summary judgment as to the claim for post-screening time.

Plaintiffs counter that they can prove a reasonable expectation to be paid based on evidence supporting: (1) Walmart's longstanding practices prior to implementing the COVID screenings which led Plaintiffs to reasonably believe their time would be tracked by the second; (2) if tracked by the second, then pay should have been adjusted to the 1/100th of an hour; (3) Walmart trained employees that they would be paid for all hours

worked; (4) Walmart's pay policy manuals established a policy and practice that associates were to be paid for all hours worked; and (5) deposition testimony from Walmart's corporate representative conceding it was Walmart's policy to pay for all hours worked. (Doc. 66 at 15.)

The Court finds Plaintiffs have presented sufficient arguments that there is a reasonable expectation to be paid wages for screenings held on April 10 and any post-screening time on April 11 and after. Because this is Walmart's Motion and they present no arguments to the contrary, the Court will not grant summary judgment under this theory.

2. Knowledge Requirement

Walmart argues that under the Fair Labors Standard Act ("FLSA"), an employer does not need to pay for work unless it had a reason to know about it. *See* 29 C.F.R. § 785.11 (employees are "suffered or permitted" to work where "the employer knows or has reason to believe that [the employee] . . . is working"). Under Arizona law, federal requirements are incorporated into state law where there is a "manifest intent to adopt federal law." *Roberts v. State*, 512 P.3d 1007, 1014 (Ariz. 2022). To support this premise, Walmart cites to the Industrial Commission of Arizona's ("ICA") "Substantive Policy Statement Regarding Interpretation of 'Hours Worked' For Purposes of the Arizona Minimum Wage Act." (Doc. 56 at 12.) In relevant part, it states:

> For purposes of enforcement and implementation of this Act, in interpreting and determining 'hours worked' under this Act, and where consistent with A.A.C. R20-5-1201 et seq. (Arizona Minimum Wage Act Practice and Procedure), the Industrial Commission of Arizona will be guided by and rely upon 29 CFR Part 785 — Hours Worked Under the Fair Labor Standards Act of 1938, which includes the following subparts of 29 CFR 785 [quoting three subsections dealing with pay for sleeping time].

*See* ICA, Substantive Policy Statement Regarding Interpretation of "Hours Worked" for Purposes of the Arizona Minimum Wage Act, https://www.azica.gov/labor-substantive-policy-hours-worked (Aug. 16, 2007).

However, Plaintiffs argue that Arizona's broad definition of "hours worked" does not incorporate the FLSA's technical requirements. Plaintiffs instead assert that in order for the interpretations contained in 29 CFR Part 785 to apply, they must be consistent with

the Arizona Administrative Code—yet Walmart has failed to cite any provision that incorporates a "knowledge requirement" in the AWA. (Doc. 66 at 11.) Plaintiffs also argue that Walmart's cited ICA provision, read as a whole, pertains to time spent sleeping and therefore cannot demonstrate a "manifest intent to adopt federal law" in the AWA. (*Id.*) (quoting *Roberts*, 512 P.3d at 1014). The Court agrees.

As the Arizona Supreme Court held, "in our system of federalism, we do not start with federal law and apply it unless the legislature manifests a contrary intent; rather, we presume that state law prevails unless we find a manifest intent to adopt federal law." *Roberts*, 512 P.3d at 1014. Walmart has cited an ICA provision dealing with the Arizona Minimum Wage Act, not the Arizona Wage Act. This is no way demonstrates a manifest intent on behalf of the Arizona legislature to adopt the FLSA's knowledge requirement in the AWA.

Walmart counters that Plaintiff's "'hours worked'" standard from the *minimum wage* statute is irrelevant to plaintiffs' Wage Act claims, for which their 'reasonable expectations' are the touchstone." (Doc. 71 at 9.) Walmart's argument turns on itself, as the Court agrees citing to provisions covering the Arizona Minimum Wage Act are insufficient to grant summary judgment on Plaintiffs' Wage Act claims. Walmart further argues that if Plaintiffs' "hours worked" standard applies, the FLSA knowledge standard still applies because the ICA "has made clear that it is 'guided by and rel[ies] upon 29 CFR Part 785' in interpreting 'hours worked' for purposes of the Arizona Minimum Wage Act." (Doc. 71 at 9.) The Court does not find this argument persuasive, as it does not reflect an express manifest intent from the legislature to incorporate the FLSA's knowledge requirement on the AWA.

But even if the knowledge requirement were to apply, the Court would still not grant summary judgment on this issue. If it applies, both parties agree that *Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413 (9th Cir. 1981) is the seminal Ninth Circuit case for the FLSA's knowledge requirement. There, the Ninth Circuit affirmed summary judgment in the employer's favor on FLSA claims because the employee failed to demonstrate a

factual dispute over the employer's alleged knowledge. *Id.* at 413. The employee testified he knew he was required to record his work time and would receive pay for everything reported, but he did not inform his employer that he worked unpaid time. *Id.* at 414 (employee "deliberately omitted the inclusion of those hours from his time sheet even though he admittedly knew that he would have been paid for those hours."). As such, the Ninth Circuit held that claims for unpaid wages cannot proceed "where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work." *Id.*

The Ninth Circuit added conditions to this holding. First, "an employer who knows or should have known that an employee is or was working" must pay for those hours. *Id.* Furthermore, "[a]n employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *Id.* Second, the Ninth Circuit concluded its opinion by stating, "[t]his is not to say that an employer may escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation. *Id.*

Plaintiffs argue if *Forrester* applies, then Walmart knew or should have known about Plaintiffs' uncompensated work. Plaintiffs argue that: (1) Walmart's executives and managers made conscious decisions not to track the time associates spent during screenings; (2) screening tables were always operated by at least one supervisory employee; (3) Walmart's electronic records show which associates completed the screenings and at what time; (4) Walmart's managers inspect stores to ensure screenings were conducted according to policy; (5) Walmart's policy-making committee explicitly decided the extra five minutes of pay was intended for the time spent in line and the screening itself; (6) Walmart's instructions to employees was to seek additional pay if the screening lasted longer than five minutes—although Plaintiffs dispute that Arrison or Smith were told this; (7) associates were never told that they could submit requests to be

paid for their time onsite that fell after completing the screening but before they could clock in; and (8) there is no evidence that Plaintiffs prevented Walmart from tracking their time. (Doc. 66 at 14.)

On the other hand, Walmart contends that: (1) Walmart paid five minutes each time an associate underwent a screening; (2) Walmart instructed associates to submit for extra time if the screening took longer; (3) Plaintiff's knew how to adjust their time and did so for other reasons, but never regarding the COVID-screenings; and (4) Plaintiffs never spoke to a manager, their store's personnel coordinator, nor reported concerns through the Open Door and Ethics system by telephone, email, or web portal. (Doc. 56 at 13–14.) Walmart thus argues it was unaware of Plaintiffs' alleged unpaid time.

The Court finds there are genuine material facts in dispute over whether Walmart had knowledge, or should have known, of Plaintiffs' alleged unpaid post-screening time. Therefore, if *Forrester* does apply as Walmart argues, Plaintiffs have pled enough to survive summary judgment. Regardless, the Court finds that Walmart has not demonstrated that the FLSA's knowledge requirement applies, and the Court will not grant summary judgment on this issue.

### 3. Treble Damages

Plaintiffs also seek treble damages in relation to their AWA claim under A.R.S. § 23-355. Treble damages are a punitive measure that are available only "when employers seek to delay payment without reasonable justification or to defraud employees of wages earned." *Crum v. Maricopa County*, 950 P.2d 171, 175 (Ariz. Ct. App. 1997). Therefore, treble damages are unavailable "when an employer withholds wages because of a reasonable, good-faith dispute." *Wood v. Nw. Hosp., LLC*, 473 P.3d 729, 737 (Ariz. Ct. App. 2020); *see also* A.R.S. § 23-352(3) (employer may withhold wages if there is "a reasonable good faith dispute as to the amount of wages due"). "[T]he award of treble damages for the bad-faith withholding of wages is discretionary with the court." *Swanson v. Image Bank, Inc.*, 77 P.3d 439, 443 (Ariz. 2003).

Walmart contends Plaintiffs cannot make the requisite showing for treble damages.

Walmart argues it implemented the additional five minutes' pay to compensate associates for the COVID screenings imposed under state and federal mandates, and it instructed employees to adjust their time if they waited more than five minutes. Plaintiffs argue that because Walmart did not pay associates for screenings conducted on April 10, 2020, and because they "deliberately changed the way time was to be tracked for the screenings without regard to whether it violated Arizona's requirement that employers track their employee's starting times," that Walmart is intentionally withholding wages. Walmart disputes whether they owe Plaintiffs anything more than already provided. In fact, Plaintiffs have already given up claims that they were underpaid for screening time post-April 10. Plaintiffs instead changed their claim to reflect that they were not paid for April 10 and post-screening time from April 11 and on.

Regarding April 10, Walmart argues in its Reply that Plaintiffs cannot prove they expected pay—barring their claim under the law—and that "Walmart required its managers to manually add five minutes of pay for that day's screening, so any failure to pay was [] merely a good faith oversight." (Doc. 71 at 12.) For the first time in this Motion and with no explanation or citation to legal authority, Walmart argues that Plaintiffs had no reasonable expectation to be paid for screenings on April 10. As discussed above, any reasonable expectation arguments for April 10 payment were completely lacking from Walmart. Therefore, this mere assertion cannot be considered a good faith dispute. Regarding Walmart's next argument, it completely ignores whether managers actually added the extra five minutes of pay for April 10, or if there was any follow-up by Walmart to ensure it was completed. The Court does not find that Walmart has pled a good faith dispute for withholding April 10 wages. Summary judgment will not be granted for treble damages as to April 10 screening time.

However, post-screening time is disputed in good faith. For example, Walmart has alleged some employees did not start work directly after screening and instead engaged in personal activities. Additionally, Walmart eventually created the application Me@Walmart that allowed its employees to clock in from their phone, which would

eliminate any delay. Walmart has also alleged to changing their policies in an attempt to abide by prior mandated COVID regulations. In fact, Plaintiffs' Response alleges that Walmart informed associates to adjust their time if the screenings ran over, and only disputes whether Plaintiffs themselves were informed of that. (*See* Doc. 66 at 14.) As such, the Court will grant Walmart's motion for summary judgment as to Plaintiffs' ability to recover treble damages for post-screening time. *See Sanborn v. Brooker & Wake Prop. Mgmt., Inc.*, 874 P.2d 982, 985 (Ariz. Ct. App. 1994) (finding treble damages were not warranted when employer withholds wages "based on a good faith belief that they owe nothing more"); *see also Olson v. McKesson Corp.*, No. CV-04-2428, 2006 WL 2355393, at *3 (D. Ariz. Aug. 14, 2006) (granting summary judgment on treble damages claim).

### B.   Record Keeping Violation Claim (Count II)

Defendants move for summary judgment on Plaintiffs' record keeping claim seeking civil penalties for failing to maintain time records reflecting the same allegedly unpaid work as the AWA claim. Walmart argues it complied with all relevant requirements. But more importantly, Walmart contends Plaintiffs have no private right of action to recover civil penalties for the alleged record keeping allegations. The Court agrees.

Walmart argues A.R.S. § 23-364(F) makes clear that civil penalties are only recoverable by law enforcement agencies—thus providing no private right of action for Plaintiffs. It states:

> Any employer who violates recordkeeping, posting, or other requirements that the commission may establish under this article shall be subject to a civil penalty of at least $250 dollars for a first violation, and at least $1000 dollars for each subsequent or willful violation and may, if the commission or court determines appropriate, be subject to special monitoring and inspections.

A.R.S. § 23-364(F). Before that, subsection (E) reads: "A civil action to enforce this article may be maintained in a court of competent jurisdiction by a law enforcement officer or by any private party injured by a violation of this article." A.R.S. § 23-364(E). And most notably, subsection (G) reads:

> Any employer who fails to pay wages or earned paid sick time required under this article shall be required to pay the employee the balance of the wages or

- 11 -

>earned paid sick time owed, including interest thereon, and an additional amount equal to twice the underpaid wages or earned paid sick time. Any employer who retaliates against an employee or other person in violation of this article shall be required to pay the employee an amount set by the commission or a court sufficient to compensate the employee and deter future violations, but not less than one hundred fifty dollars for each day that the violation continued or until legal judgment is final. The commission and the courts shall have the authority to order payment of such unpaid wages, unpaid earned sick time, other amounts, and civil penalties and to order any other appropriate legal or equitable relief for violations of this article. *Civil penalties shall be retained by the agency that recovered them and used to finance activities to enforce this article. A prevailing plaintiff shall be entitled to reasonable attorney's fees and costs of suit.*

A.R.S. § 23-364(G) (emphasis added).

Construing these subsections together, courts have found that "the statute's text mean[s] that an employee may bring a private action to recover unpaid [] *wages*, but only the ICA can recover civil penalties, not the individual." *Vega v. All My Sons Bus. Dev. LLC*, 583 F. Supp. 3d 1244, 1259–60 (D. Ariz. 2022) (finding "no private right of action" for civil penalties and granting judgment on the pleadings); *see also Ariz. Chamber of Com. & Indus. v. Kiley*, 399 P.3d 80, 86 (Ariz. 2017) (finding A.R.S. § 23-364(G) "provides that civil penalties shall be retained by the agency that recovered them and used to finance activities to enforce this article") (internal quotations omitted).

Plaintiffs cite to *Salazar v. Driver Provider Phoenix LLC*, No. CV-19-05760-PHX-SMB, 2023 WL 1966915, at *7 (D. Ariz. Feb. 13, 2023) and *Senne v. Kansas City Royals Baseball Corp.*, 591 F. Supp. 3d 453, 575–76 (N.D. Cal. Mar. 15, 2022) to support their argument that there is a private right of action. However, in both those cases the parties never raised, and the court never decided, if a private right of action existed.

Here, having analyzed the issue, the Court finds that Plaintiffs do not have a private right of action to obtain civil penalties under their record keeping claim. Accordingly, summary judgment is granted on this claim.

### C.   Unjust Enrichment Claim (Count III)

Lastly, Walmart seeks summary judgment on Plaintiffs' unjust enrichment claim.

Such a claim requires proof of the following five elements: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 283 P.3d 45, 49 (Ariz. Ct. App. 2012).

Walmart focuses on factor five, arguing Plaintiffs fail to meet this factor whether they win or lose on their AWA claim. As Plaintiffs have already conceded in their Complaint, "should Plaintiffs prevail on Count I [AWA claim] herein for all wages and damages claims, then they would not be entitled to recover under this Count III [unjust enrichment claim]." (Doc. 1 at 13 ¶ 63); s*ee Covino v. Forrest*, No. 1-CA-CV 13-0433, 2014 WL 3030111, at *13 (Ariz. Ct. App. July 13, 2014) (recovery of damages through separate claim precluded unjust enrichment claim). However, Plaintiffs argue that if they lose the on the AWA claim they may still recover under their unjust enrichment claim. This is correct. *See Lopez v. Musinorte Ent. Corp.*, 434 F. App'x 696, 699 (9th Cir. 2011) ("Under Arizona law, a plaintiff can pursue an unjust enrichment claim as an alternative theory of recovery in conjunction with a breach of contract claim, subject, however, to only one recovery.").

Walmart disputes no other factors. As such, summary judgment will be denied on this claim.

## IV.  CONCLUSION

Accordingly,

**IT IS ORDERED** granting Defendants' Motion for Summary Judgment as to precluding treble damages under Plaintiffs' Arizona Wage Act claim for post-screening time (Count I), and Plaintiffs' record keeping claim in its entirety (Count II). (Doc. 56.)

…

…

…

…

**IT IS FURTHER ORDERED** denying Defendants' Motion for Summary Judgment on all remaining portions of Plaintiffs' Arizona Wage Act claim, including treble damages for April 10 screening time (Count I), and Plaintiffs' unjust enrichment claim (Count III).  (Doc. 56.)

Dated this 10th day of July, 2023.

Honorable Susan M. Brnovich
United States District Judge