**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathy Arrison, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Walmart Incorporated, et al.,<br><br>Defendants. | No. CV-21-00481-PHX-SMB<br><br>**ORDER** |

Before the Court is Plaintiffs Kathy Arrison and Tristan Smith's Motion for Rule 23 Class Certification (Doc. 55). Defendants Walmart, Inc. and Wal-Mart Associates, Inc. (collectively "Walmart") filed a Response (Doc. 65), and Plaintiffs filed a Reply (Doc. 72). Oral argument was held on June 28, 2023. After considering the parties' arguments, the Court will grant Plaintiffs' Motion for the reasons discussed herein.

**I.   BACKGROUND**

Plaintiffs seek Rule 23 class certification on behalf of a punitive class of Arizona non-exempt Walmart associates alleging claims for unpaid wages under the Arizona Wage Act and civil penalties for related record keeping violations. From April 10, 2022 through February 2022, Walmart began a nationwide policy requiring all associates at retail locations to complete a mandatory COVID screening before their shift. (Docs. 55 at 7; 65 at 5.) Screenings entailed walking to a designated location, standing in line at least six feet apart, scanning one's badge or recording an employee identification number, answering a series of five-to-seven questions relating to symptoms and COVID exposure,

and having one's temperature taken.  (Docs. 55 at 7; 65 at 7.)  After completing the screening, associates were permitted to clock-in, but only at the appropriate time their shift was scheduled to begin.  (Doc. 55 at 7.)

Plaintiff alleges Walmart did not pay associates for screenings held on April 10, 2022.  (*Id.*)  On April 11, 2022, Walmart began paying associates an extra daily fixed sum equivalent to five minutes' work for the screenings.  (*Id.*; Doc. 65 at 5.)  Walmart alleges managers were instructed to manually add five minutes of pay for any associates who underwent screenings prior to April 11.  (Doc. 65 at 11.)  Walmart also allowed associates to increase their time entries if the screenings took longer than five minutes.  (Docs. 55 at 8; 65 at 5.)  Plaintiffs allege less than two percent of shifts were so adjusted, and that some employees, including Arrison and Smith, "labored under the understanding they were not being paid at all for the COVID screening."  (Doc. 55 at 8.)  Plaintiffs Arrison and Smith did not adjust their time entries with Walmart.  (Doc. 65 at 5.)  Plaintiffs contend the additional daily five minutes of pay was distributed in a manner that was not visible to associates.  (Doc. 55 at 7.)

Throughout this period, Walmart used a timekeeping program for all non-exempt Arizona associates.  (Doc. 55 at 10–11.)  This computer system tracked associate's time down to the 1/1000th of a second, and Walmart rounded up pay to the nearest 1/100th of the hour—every 36 seconds.  (*Id.* at 11.)  Walmart logged electronic timestamps when each associate answered their screening questions.  (*Id.*)

In May 2020, Walmart rolled out a mobile phone application allowing Arizona associates the option to complete their screening on their devices from any location. (Doc. 65 at 7–8.)  If an associate used the application to self-screen, Walmart instructed associates to do so within 15 minutes of their scheduled shifts.  (*Id.* at 8.)  Upon arriving to work, associates were to display their mobile device at the screening table to demonstrate they had cleared the screening and underwent a temperature check.  (*Id.*)  After verifying the screening completion, or undergoing the screening at the table upon arrival, the associate was permitted to enter the store and clock-in when their shift was

scheduled to begin. (*Id.*)

Walmart permitted associates to arrive at the store before their scheduled shift "for reasons such as public transportation, carpool arrangements, or to shop." (*Id.*) Associates arriving early to their shift—after completing the screening—could enter the building and engage in personal activities. (*Id.*) When it was time to clock-in, associates could use a timeclock or a computer program available on terminals throughout the store. (*Id.*) Beginning April 2021, Walmart provided associates the option to clock-in through the mobile phone application. (*Id.* at 10.)

Plaintiffs originally sought damages for failing to pay for COVID screening time and post-screening time (the time between completion of screening and clocking in). Now, Plaintiffs only seek certification and damages for the failure to pay post-screening time during the time period of April 10, 2020 to February 27, 2020 (proposed class), and COVID screening time only for April 10, 2020 (subclass). Furthermore, after this Motion was filed the Court granted summary judgment in favor of Walmart on Plaintiffs' recordkeeping claim, which will therefore not be addressed in this Motion.

## II. LEGAL STANDARD

"Parties seeking class certification bear the burden of demonstrating that they have met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b)." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011) (citing *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001)). Rule 23(a)–(b) read as follows:

> **(a) Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.
>
> **(b) Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:

>   (1) prosecuting separate actions by or against individual class members would create a risk of:
>       (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>       (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>   (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>   (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>       (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>       (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>       (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>       (D) the likely difficulties in managing a class action.

A plaintiff seeking class certification must "affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Likewise, when considering class certification courts must engage in "a rigorous analysis." *Id.* at 350–51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). The Rule 23 analysis may "entail some overlap with the merits of the plaintiff's underlying claim," *id.* at 351, but it "grants courts no license to engage in free-ranging merits inquiries at the certification stage," *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*; *see also*

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010) ("Although certification inquiries such as commonality, typicality, and predominance might properly call for some substantive inquiry, the court may not go so far . . . as to judge the validity of these claims." (cleaned up)). In fact, "neither the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies [Rule 23]." *United Steel*, 593 F.3d at 809 (quoting *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975)).

Nevertheless, "plaintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean Wholesale Grocery Coop., Inc., v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022). "Failure to meet any one of the requirements set forth in Rule 23 precludes class certification." *Miller v. Am. Standard Ins. Co. of Wis.*, 759 F. Supp. 2d 1144, 1146 (D. Ariz. 2010).

## III. DISCUSSION

### A. Rule 23(a)

#### 1. Numerosity

Under the numerosity requirement, a proposed class of at least 40 members is typically satisfactory. *See Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 365 (D. Ariz. 2009). Here, Plaintiffs cite to Walmart's records showing there are approximately 79,970 hourly associates in the proposed class, and an estimated 15,986 members in the April 10, 2020 subclass. (Doc. 55 at 16.) Defendants do not dispute this. The Court therefore finds Plaintiffs' proposed class and subclass satisfy numerosity.

#### 2. Commonality

To prove commonality, there must be a "common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims

in one stroke." *Wal-Mart*, 564 U.S. at 350. A plaintiff need only present "a single common question of law or fact that resolves a central issue." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 728 (9th Cir. 2020). To satisfy the requirement, not every issue of law and fact need to be common. *Juvera v. Salcido*, 294 F.R.D. 516, 521 (D. Ariz. 2013). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class. *Id.* (quoting *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041–42 (9th Cir. 2012)). "However, [i]f there is no evidence that the entire class was subject to the same allegedly [illegal] practice, there is no question common to the class." *Vega v. All My Sons Bus. Dev. LLC*, 583 F. Supp. 3d 1244, 1261 (quoting *Ellis*, 657 F.3d at 983) (internal quotation marks omitted). Yet, "[a] common contention need not be one that 'will be answered, on the merits, in favor of the class.'" *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (quoting *AmGen*, 568 U.S. at 459).

Here, Plaintiffs allege the common question amongst the class is whether Walmart's uniform COVID screening policies resulted in unpaid hours worked. (Doc. 72 at 7.) These policies applied to every hourly Walmart associate in Arizona between April 10, 2020, and February 27, 2022. (Doc. 55 at 11.) Plaintiffs concede that beginning April 11, 2020, Walmart paid a fixed sum equivalent to five minutes of pay for each retail associates' shift that was subject to the COVID screening. (*Id.*) Yet, Plaintiffs counter that the fixed sum was insufficient to compensate for the extra working time added on post-screening.

Plaintiffs also concede that Walmart allowed its workers to request pay adjustments if the COVID screening took longer than five minutes. (*Id.*) However, Plaintiffs Arrison and Smith allege they worked under the impression that Walmart was paying nothing for the screenings, and therefore Walmart could not rely on associates requesting pay adjustments. (*Id.*) Nevertheless, Plaintiffs argue that their "damage analysis fully credits Walmart for the small fraction of instances when pay adjustments were recorded by reducing the calculated instances of unpaid time by the ratio of

instances where Walmart recorded pay adjustments." (*Id.*)

Plaintiffs argue the common questions can be proven through the application of Walmart's policies, computer logs, timekeeping records, and payroll system. (*Id.*) Additionally, Plaintiffs argue that any Arizona Walmart associate trying their case in an individual capacity would be utilizing the same evidence as those on a class-wide basis. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (finding a common question is one "where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to be generalized, class-wide proof" (cleaned up)).

Although Defendants raise objections to individual evidence and proof being required, they do so only in the context of Rule 23(b)(3), not the commonality factor at issue in Rule 23(a)(2). (*See* Doc. 65.) In fact, Defendants make no objections to Plaintiff's Rule 23(a) arguments at all. Accordingly, the Court finds that Plaintiff has sufficiently demonstrated commonality for the proposed class and subclass. *See Juvera*, 294 F.R.D. at 521.

      3. <u>Typicality</u>

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). These requirements tend to merge, as "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 157 n.13. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). In reviewing for typicality, courts must determine "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the

same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Thus, "[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* (cleaned up).

Here, both named representatives were subject to Walmart's screenings and policies, underwent the screenings, worked on April 10, 2020, and were not paid for the time spent screening that day. (Doc. 55 at 18.) Plaintiffs argue that all punitive class members were subject to the same policies, timekeeping systems, and statutory and regulatory requirements under the law. (*Id.*) As such, Plaintiffs argue that to the extent Walmart failed to pay associates' required pay, that failure was the same for Arrison, Smith, and the class they seek to represent. (*Id.*); *see also In re AutoZone, Inc., Wage & Hour Emp. Pracs. Litig.*, No. 3:10-md-02159-CRB, 2016 WL 6834138, at *1 (N.D. Cal. Nov. 21, 2016) ("claims based on a uniform policy are entitled to class certification"). Defendants raise no objections. As such, the Court finds typicality is satisfied. *See Hanon*, 976 F.2d at 508.

### 4. Adequacy

To determine if the class representatives will fairly and adequately represent the interests of the class, the Court must determine that the representatives have no conflicts with the class, have a common interest with the class, and that the named plaintiffs will prosecute the action vigorously on behalf of the class. *See Hanlon*, 150 F.3d at 1020; *Ellis*, 657 F.3d at 985.

Arrison and Smith allege that they both worked on April 10, 2020 and after, and as a result claim recovery for all unpaid wages owed to associates under the law and governing Walmart polices at every Arizona retail store. (Doc. 55 at 19.) For these reasons, Arrison and Smith argue they have a common interest with the class and no conflicting efforts. Next, Arrison and Smith articulate their sufficient interest in the case to vigorously represent the class stems from "a personal monetary interest measured in the hundreds of dollars." (*Id.*) Additionally, both have sat for discovery and depositions,

and have hired attorneys with experience prosecuting class litigation to assist in pursuing claims for the class. (*Id.*) Defendants do not object. The Court finds adequacy is satisfied. *See Hanlon*, 150 F.3d at 1020; *Ellis*, 657 F.3d at 985.

In conclusion, Plaintiffs have satisfied Rule 23(a).

**B.    Rule 23(b)**

Along with satisfying Rule 23(a)'s requirements, Plaintiffs must also satisfy at least one requirement under Rule 23(b). Here, Plaintiffs argue the class meets the requirements of Rule 23(b)(3). Defendants dispute this.

Rule 23(b)(3) class certification is permitted if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 568 U.S. at 459. Furthermore, the predominance requirements under the rule require more than a finding of mere commonality, but "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Vega*, 583 F. Supp. 3d at 1263 (quoting *LaCross v. Knight Transp. Inc.*, No. CV-15-00990-PHX-JJT, 2022 WL 101196, at *4 (D. Ariz. Jan. 11, 2022)).

Lastly, before certification can occur, the court must consider the superiority factors which include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) and the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *see LaCross*, 2022 WL 101196, at *6 ("A consideration of these factors requires the court to focus on the efficiency and economy elements of the class

action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1780 at 562 (2d ed. 1986))).

### 1. Predominance

Plaintiffs argue that predominance is satisfied. Plaintiffs' central issues are whether under Arizona law the proposed class is owed unpaid wages from Walmart's pay system imposed when it required COVID screenings. (Doc. 55 at 20.) Specifically, Plaintiffs argue that because Walmart's timekeeping, payroll, and COVID screening policies and processes were standardized across all Arizona retail stores, Plaintiffs' claims consist of common questions of law and fact that predominate over individual questions. (Doc. 55 at 13–14.) Plaintiffs cite to *Tyson Foods*, which held:

> When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

577 U.S. at 453.

Plaintiffs further assert that Walmart's computer records operate the same for the entire class by showing the precise time COVID screening questions were logged and answered, and when associates subsequently clocked in. (Doc. 55 at 20–21.) But for outlier occasions such as associates being manually paid for additional time or completing the COVID screening well before clocking in for their shift, Plaintiffs argue these individual issues do not defeat predominance. *See McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242, 253–54 (D. Ariz. 2022) (finding the existence of individualized issues or defenses alone do not defeat certification so long as Rule 23 requirements are otherwise met). To overcome these discrepancies, Plaintiffs present a damages calculation that "fully credits Walmart for any manual pay adjustments" and "when there is an unusually long lag time between the COVID screening and the clock-in . . . Plaintiffs' damage analysis does not 'charge' Walmart for the extended time." (Doc. 55 at 21.)

Furthermore, Plaintiffs argue that Walmart's punctuality policy disciplines associates who clock in 10-minutes or more from their shift's start and end time. (*Id.*) Therefore, Plaintiffs had their expert, Dr. Baggett, apply this policy in his analysis for associates who completed their screening 10 minutes or more prior to clocking in. In such instances, "the unpaid time was calculated using the average time for the site that day, rather than the longer period that (at least arguably) would have been in contravention of Walmart's policy." (*Id.*) For these reasons, Plaintiffs argue no individual evidence is needed. (*Id.* at 21–22.)

Defendants raise the following objections:

          a.      Proving Wage Act Elements

Defendants first argue that Plaintiffs' Wage Act claim, A.R.S. § 23-355(A) which permits a civil claim "if an employer . . . fails to pay wages due any employee," requires individual proof. (Doc. 65 at 13.) Reason being, the statute defines "wages" as "nondiscretionary compensation due an employee in return for labor or services . . . for which the employee has a reasonable expectation to be paid. A.R.S. § 23-350(7). Defendants contend that Plaintiffs fail to mention the reasonable expectations requirement, let alone argue its basis in common proof. *See Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 73 (S.D.N.Y. 2013) ("Failure to establish that the elements of each cause of action are subject to class wide proof is sufficient grounds for denying class certification."); *see also Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) ("Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." (internal quotations omitted)).

As such, Defendants contend that no common evidence—such as an associate's contract or Walmart's policies—can establish Arizona associates' expectations for additional pay beyond what was already promised. (Doc. 65 at 14.) Instead, Defendants make merits-based arguments that Plaintiffs rely on an "hours worked" standard that does not apply to Wage Act claims, but rather to minimum wage claims. (*See id.*)

- 11 -

Contradicting Defendants' assertions, Plaintiffs argue that A.R.S. § 23-350(7)'s reasonable expectations requirement does not require individual evidence because Arizona courts apply an objective standard in determining "reasonable expectations." *See Walker v. Auto-Owners Ins. Co.*, 517 P.3d 617, 623 (Ariz. 2022). Accordingly, Defendants cannot defeat class certification for "claims arising from standardized agreements by arguing that extrinsic evidence related to each class member's understanding of the agreement would need to be litigated." *McClure*, 341 F.R.D. at 252.

Here, Plaintiffs argue the class had a reasonable expectation to be paid in accordance with Arizona law. *See Banner Health v. Med. Sav. Ins. Co.*, 163 P.3d 1096, 1100 (Ariz. Ct. App. 2007) ("It has long been the rule in Arizona that a valid statute is automatically part of any contract affected by it, even if the statute is not specifically mentioned in the contract." (quoting *Higginbottom v. State*, 51 P.3d 972, 975 (Ariz. Ct. App. 2002))). Plaintiffs allege the class was deprived of wages required under Arizona law, which is automatically incorporated into their employment contracts. *See id.* This does not require individual evidence. The Court also notes it previously has held that Plaintiffs alleged sufficient "reasonable expectations" to be paid to survive summary judgment on this issue.

The Court also finds Defendants' "hours worked" arguments to be merit-based and inapposite at the Rule 23 class certification stage. *See United Steel*, 593 F.3d at 809. However, the Court is persuaded that for common evidence, Plaintiffs allege they will produce Walmart's stated policy, the policy's promise to pay for "all hours worked," and evidence of Walmart's record keeping capabilities with a precision equivalent to measuring every 36-seconds of work. (Doc. 72 at 9.)

      b.  Suitability of Certifying a Class for Post-Screening Time

Plaintiff's Wage Act claim relies on an Arizona regulation that defines "compensable time" as "all hours for which an employee covered under the [wage law] is employed and required to give to the employer, including all time during which an employee is on duty or at a prescribed work place and all time the employee is suffered

or permitted to work." Ariz. Admin. Code § R20-5-1202.[1]  Under this claim, Plaintiffs allege:

> Walmart systematically required uncompensated time. It used a fixed sum to pay its workers for standing in line and completing the COVID screenings, but paid nothing for the time after the screenings were completed and until the employees were able to eventually clock in. That was time spent by Walmart's works "at a prescribed work place." It definitionally qualified as 'hours worked' under Arizona law and should have been paid.

(Doc. 55 at 13) (citation omitted).

Defendants assert that any unpaid post-screening time requires individual proof. Specifically, Defendants argue that upon arriving at the store to an associate clocking in, if it did not exceed five minutes, then the associate received all pay expected. *See Thompson v. Apache County*, No. CV 10-8009-PCT-DGC, 2011 WL 5547981, at *10 (D. Ariz. Nov. 15, 2011) (rejecting Wage Act claim because employer paid the entirety of time worked). Therefore, Defendants assert Plaintiffs are required to compare an associate's received pay to the time at issue on an individual basis. (Doc. 65 at 17.)

First, Defendants argue that Plaintiffs have failed to prove a common experience amongst associates incurring post-screening "off the clock" time. Defendants allege the record shows variations on (1) whether screenings occurred; (2) if so, whether the associate was screened prior to clocking in; (3) if so, the time between an associate screening and clocking in; (4) whether that time is compensable under Plaintiff's legal theory; and (5) whether an associate submitted for a pay adjustment. (Doc. 65 at 17–18.)

Plaintiffs concede that not every associate screened every day. However, Plaintiffs counter they can provide Walmart's policy that screenings were to begin April 10, 2020, that instances where associates did not screen are identifiable in the data "once Walmart started tracking when associates completed the screening questions," and that to fill in the gaps, Plaintiff's expert has provided two models for a jury to consider on how many associates screened each day. (Doc. 72 at 12–13.) Plaintiffs describe that their

---

[1] As discussed above, at the class certification stage the Court will not engage in a merits-based discussion on whether this regulation is applicable to A.R.S. § 23-350.

- 13 -

expert's model was created to favor Walmart in the following ways:
> If the employee clocked-in before screening, Dr. Baggett assumed there was no unracked time. If an associate adjusted her time for a shift, Dr. Baggett assumed that adjustment eliminated any untracked time that day. If an associate clocked-in more than nine-minutes after screening, Dr. Baggett assumed the associate did something other than go straight to work, so he did not measure that time.

(*Id.* at 13) (citations omitted).

Second, Defendants argue that no common evidence can reveal a Plaintiff's "reasonable expectation" for post-screening pay because Walmart's policy was not to pay for post-screening time. (Doc. 65 at 18.) As Plaintiffs allege, however, the expectation under their common question was to be paid "for all hours worked as defined by Arizona law." (*See* Doc. 55 at 13.)

Third, Defendants contend that every associate's location post-screening is required and individually specific because Plaintiffs assume associates spent time in the store after screening, some associates answered screening questions remotely, and by April 2021 associates could clock in using their mobile device upon entering the store—making it possible for no post-screening time to occur inside the store. (Doc. 65 at 19.) Plaintiffs counter that their damages analysis accounts for such outliers and does not "charge" Walmart for such extended lag time, or lack of time. (Doc. 55 at 21.)

Lastly, Defendants argue that only individual inquiries can establish whether post-screening time was used for personal activities and are thus non-compensable. (Doc. 65 at 19–20.) Plaintiffs counter that their damages model takes lag time for personal activities into account, and that class damages can be proven by such a statistical model where employers fail to keep adequate records. *See Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1139–41 (9th Cir. 2016) (where defendant argued there were insufficient records to show class members' individual experience, the Ninth Circuit found that "class members may be compelled to resort to an aggregate method of proving wage underpayment"); *see also Ridgeway*, 2017 WL 1549329, at *1–2 (plaintiffs proved a wage class action through aggregate damage model).

For all these reasons, the Court finds Plaintiffs have adequately demonstrated the post-screening Wage Act question predominates.

### 2. Superiority

Lastly, Rule 23(b)(3) requires that a class action be the superior method of adjudication, an analysis that "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974). Under the first factor, the Court must weigh the interest of the class members in "individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). Plaintiffs argue that because the case revolves around Walmart's standardized policies and Arizona law governing wage compliance, a class action would not be manageable as a single plaintiff's case. (Doc. 55 at 22.) Defendants do not dispute this. Therefore, this factor weighs in favor of certification.

Second is "the extent and nature of any litigation concerning the controversy already begun by or against class members." Fed. R. Civ. P. 23(b)(3)(B). Plaintiffs attest there are no duplicative lawsuits with no objection by Defendants. (Doc. 55 at 22.) This factor thus weighs in favor of certifying the class.

Third is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C). Plaintiffs argue this forum is desirable because all class members worked in Arizona. (Doc. 55 at 22.) Defendants do not object. This factor weighs in favor of certification.

Lastly is "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). Plaintiffs contend that class certification will benefit the members of the class who have interests in "securing the just adjudication of their rights as against Walmart." (Doc. 55 at 22.) Defendants do not object. This favor therefore also weighs in favor of certification.

With both predominance and the superiority factors weighing in favor of certification, the Court finds Rule 23(b)(3) satisfied.

### C. Class Counsel Certification

Under Rule 23(g)(1), once a Court certifies a class, it must also appoint class counsel. In doing so, the Court must consider:

> "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."

Fed. R. Civ. P. 23(g)(1). The Court finds that counsel at Lear Werts LLP has the necessary experience in employment, wage and hour, and class action litigation to represent this class, has committed the necessary resources to this litigation, and has sufficiently demonstrated their capability to understand the law and claims at hand. The Court thus certifies Lear Werts LLP as Class Counsel.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** granting Plaintiffs' Motion for Rule 23 Class Certification for the proposed class and subclass. (Doc. 55).

**IT IS FURTHER ORDERED** appointing counsel at Lear Werts LLP as Class Counsel.

Dated this 10th day of July, 2023.

Honorable Susan M. Brnovich
United States District Judge