Todd C. Werts, Ariz. Bar No. 35380
Bradford B. Lear, *pro hac vice*
LEAR WERTS LLP
103 Ripley Street
Columbia, MO 65201
Telephone:  573-875-1991
Email:  werts@learwerts.com
Email:  lear@learwerts.com


Attorneys for Plaintiffs



In the United States District Court
District of Arizona
Phoenix Division

| | |
|---|---|
| Kathy Arrison and Tristan Smith, individually, and on behalf of a Class of others similarly situated, | Case No. CV-21-00481-PHX-SMB |
| Plaintiffs, | PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |
| v. | |
| Walmart, Inc. and Wal-Mart Associates, Inc., | |
| Defendants. | |

TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................ 2

I.     Procedural Background ............................................................................ 2

II.    Summary of the Common Class Claims ................................................ 3

III.   Summary of the Proposed Class Settlement ....................................... 4

ARGUMENT ....................................................................................................... 5

I.     The Court has already certified the class............................................ 5

II.    The Court should preliminarily approve the proposed settlement ...................... 6

       A.    The Settlement is the product of good faith, arm's-length
             negotiations among experienced counsel facilitated by a private
             mediator.............................................................................................. 6

       B.    The Settlement has no obvious deficiencies........................................ 7

       C.    The Settlement does not provide preferential treatment to
             the class representatives.................................................................... 8

       D.    The proposed relief is well-within the range of possible
             approval .............................................................................................. 9

       E.    The proposed settlement is otherwise fair, adequate, and
             reasonable...........................................................................................10

III.   The Court should approve the means and form of notice to the class. ..............11

CONCLUSION ...................................................................................................12

TABLE OF AUTHORITIES

CASES

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ................................................................11

Churchill Vill., LLC v. Gen. Elec.,
    361 F.3d 566 (9th Cir. 2004) ................................................................10

Congdon v. Uber Techs., Inc.,
    Case No. 16-cv-02499-YGR, 2019 WL 2327922
    (N.D. Cal. May 31, 2019) ................................................................ 9

Edenborough v. ADT, LLC,
    Case No. 16-cv-02233-JST, 2017 WL 4641988
    (N.D. Cal. Oct. 16, 2017) ................................................................ 6

Garrett v. Advantage Plus Credit Reporting Inc.,
    Case No. CV-21-02082-PHX-DJH, 2023 WL 5806408
    (D. Ariz. Sept. 6, 2023) ................................................................ 5

Harris v. Vector Mktg. Corp.,
    Case No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .............. 6

Howard v. Web.com Grp. Inc.,
    Case No. CV-19-00513-PHX-DJH, 2020 WL 3827730
    (D. Ariz. July 8, 2020) ................................................................ 2

Horton v. USAA Cas. Ins. Co.,
    266 F.R.D. 360 (D. Ariz. 2009) ................................................................ 5

In re Bluetooth Headset Prods. Liab. Lit.,
    654 F.3d 935 (9th Cir. 2011) ................................................................ 7

In re Tableware Antitrust Litig.,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................ 9

In re Washington Pub. Power Supply Sys. Sec. Litig.,
    720 F. Supp. 1379 (D. Ariz. 1989) ................................................................ 7

McKinney-Drobnis v. Oreshack, 16 F.4th 594 (9th Cir. 2021) ................................................................ 7

iii

Munoz v. Giumarra Vineyards Corp.,
    Case No. 1:09-cv-00703-AWI-JLT, 2017 WL 1293240
    (E.D. Cal. Mar. 24, 2017) ........................................................................... 5

Riker v. Gibbons,
    Case No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012
    (D. Nev. Oct. 28, 2010) ............................................................................... 7

Rodriguez v. QS Next Chapter LLC,
    Case No. CV-20-00897-PHX-DJH, 2020 WL 6882844
    (D. Ariz. Nov. 18, 2020) ............................................................................. 2

Rodriguez v. West Publg' Corp.,
    563 F.3d 948 (9th Cir. 2009) ...................................................................... 9

Roes, 1-2 v. SFBSC Mgmt., LLC,
    944 F.3d 1035 (9th Cir. 2019) .................................................................... 7

Satchell v. Fed. Express Corp.,
    Case Nos. C03–2659 SI, C 03-2878 SI, 2007 WL 1114010
    (N.D. Cal. Apr. 13, 2007) ........................................................................... 6

Williams v. MGM-Pathe Commc'ns Co.,
    129 F.3d 1026 (9th Cir. 1997) ................................................................ 7–8

Wren v. RGIS Inventory Specialists,
    Case No. C–06–05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ............... 7

Zwicky v. Diamon Resorts Inc.,
    Case No. CV-20-02322-PHX-DJH, 2023 WL 5751465
    (D. Ariz. Sept. 6, 2023) ............................................................................ 10

# INTRODUCTION

This case concerns the nationwide policy instituted by Walmart to require pre-shift COVID screenings for every employee in Arizona from April 10, 2020 until February 28, 2022. Plaintiffs claim this policy deprived them and other Arizona workers their full earned wages and ran afoul of Arizona law. Walmart admits that its COVID-screening requirement applied to all its workers, but claims its equally uniform policy of paying all employees an additional five minutes of pay for each shift—regardless of whether the employee even completed the screening—more than adequately compensated employees for the time required by the screenings.

After completing a full pretrial workup of the case—including Rule 12 motion practice, written discovery, seven fact depositions, expert reports, three expert depositions, dispositive motion practice, and a contested Rule 23 certification motion—the Parties participated in a full day mediation with an experienced wage and hour mediator, Frank Neuner. That mediation culminated in a compromise settlement in the amount of $2,500,000 (the "Gross Settlement Fund"). That agreement has now been reduced to a formal agreement, signed by all parties. *See* Ex. 1 Settlement Agreement.

The Proposed Settlement in this case provides Participating Class Members with meaningful monetary relief. Under the proposed allocation plan, nearly 80,000 current and former Walmart employees will receive additional pay for every pay period they worked during the nearly two-year time period that Walmart required COVID screenings. After reduction for attorneys' fees, costs, service awards, and administration, the average class member will receive at least $19.32 with the longest-tenured class members receiving at least $47.53. This equates to approximately 50% of the best-day value for all claims remaining after summary judgment. And while this case has always involved relatively modest per capita damages (owing to the narrow question at issue), this settlement still yields real compensation for class members.

"At this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *Howard v. Web.com Grp. Inc.*, Case No. CV-19-00513-PHX-DJH, 2020 WL 3827730, at *3 (D. Ariz. July 8, 2020) (quotation omitted). To do so, the Court assesses four basic factors: "[1] whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiency, [3] does not improperly grant preferential treatment to class representatives or segments of the class and [4] falls within the range of possible approval." *Rodriguez v. QS Next Chapter LLC*, Case No. CV-20-00897-PHX-DJH, 2020 WL 6882844, at *6 (D. Ariz. Nov. 18, 2020) (cleaned up). As shown below, the Proposed Settlement easily satisfies each of these preliminary approval factors. Certification of the proposed Settlement Class is also fully warranted under Fed. R. Civ. P. 23. *Id.* at *2.

Accordingly, Plaintiff's motion for preliminary approval should be granted.

**FACTUAL BACKGROUND**

As the Court is already familiar with the facts and evidence in this case, having previously ruled on both motions for summary judgment and for class certification, Plaintiffs provide only an abbreviated factual background here.

## I. Procedural Background

This case was initiated when Plaintiffs filed their Complaint on March 22, 2021. *See* Dkt. 1. The Parties conducted substantial discovery, including written discovery, voluminous productions of documents and data, and depositions of the plaintiffs, percipient Walmart witnesses, a Rule 30(b)(6) witness, and expert witnesses. *See* Ex. 2 Declaration of Todd C. Werts ("Werts Decl.") at ¶¶13–14. Collectively, the Parties produced four reports from three expert witnesses. *Id.* at ¶16. The Parties also engaged in significant motion practice, including an initial motion to dismiss, a motion for class certification, and a motion for summary judgment. *Id.* at ¶17. On July 10, 2023, the Court granted Walmart's motion for summary judgment in part, dismissing Plaintiffs' claims for treble damages (except with respect to the claim for unpaid

wages for April 10, 2020) and failure to keep accurate records. *Id.* at ¶18; Order (Dkt. 78). On July 11, 2023, the Court granted Plaintiffs' motion for class certification on the remaining claims (except for the claim for unjust enrichment, which was not included in the motion for class certification). *See* Ex. 2 Werts Decl. at ¶22; Order (Dkt. 80).  On July 25, 2023, Walmart filed a petition in the Ninth Circuit Court of Appeals for permission to appeal the class certification decision, pursuant to Federal Rule of Civil Procedure 23(f). *See* Ex. 2 Werts Decl. at ¶23; Dkt. 84.  The petition is fully briefed but currently stayed by joint motion of the Parties pending approval of the Settlement. Ex. 2 Werts Decl. ¶24.

The Parties participated in a mediation on September 14, 2023 before Frank Neuner, and reached an agreement to settle the Action. *Id.* at ¶25. As a result of the arm's-length negotiations, the Parties have agreed to the terms memorialized in this Settlement Agreement. *See* Ex. 2 Werts Decl. ¶¶26; Ex. 1 Settlement Agreement.

**II.    Summary of the Common Class Claims**

Plaintiffs assert claims against Walmart on behalf of a certified class consisting of all current and former nonexempt employees who went through a COVID-19 screening at least once in Arizona. *See* Am. Complaint (Dkt. 26) at ¶¶ 10–48; Order Certifying Class (Dkt. 80). Plaintiffs allege Walmart violated Arizona law because it failed to pay wages for time spent in COVID-19 screening and failed to keep accurate records of related work time.  *See* Am. Complaint (Dkt. 26) at ¶¶ 57–77. Accordingly, they assert claims for failure to pay wages under the Arizona Wage Act, for failure to keep accurate records, and for unjust enrichment. *Id*. Following the Court's summary judgment rulings, only Plaintiffs' wage claim survived. *See* Order (Dkt. 78). Importantly, the enhanced damages available under A.R.S. § 23-355 for treble damages was only allowed to proceed for Plaintiffs' claims related to screenings on April 10, 2020. *See* Ex. 2 Werts Decl. at ¶18; Order (Dkt. 78) at 10–11. On the one hand, those claims were strengthened by the fact that Walmart did not begin paying an additional five-minutes of pay until April 11, 2020. *See* Ex. 2 Werts Decl. at ¶20; Order

3

(Dkt. 78) at 10–11. But the claim was subject to a proof problem given that no records existed to show which employees completed a screening on April 10, 2020. *See* Ex. 2 Werts Decl. at ¶21.

**III.    Summary of the Proposed Class Settlement**

In the settlement agreement, the proposed Settlement Class is the same as the overarching class previously certified by the Court: all individuals who worked at a Walmart retail store in Arizona as a nonexempt store employee at any point during the Class Period. *See* Ex. 1 Settlement Agreement at ¶2; Ex. 2 Werts Decl. at ¶27. The gross settlement fund of $2,500,000 equates to just under 50% of Plaintiffs' best possible outcome at trial. *See* Ex. 2 Werts Decl. at ¶28.

At the final approval hearing, counsel will seek approval of an attorney fee of 25% of the common fund created by the settlement and reimbursement of up to $125,000 in out-of-pocket expenses incurred by class counsel prosecuting the case. *See* Ex. 2 Werts Decl. at ¶29. The settlement also provides for the payment of $5,000 as service awards to the two named plaintiffs. *See* Ex. 1 Settlement Agreement at ¶30. Finally, the Settlement Agreement provides for the cost of administration of the settlement to be paid from the Gross Settlement Fund. *Id.* at ¶31. Class Counsel has solicited bids from four different reputable class administrators, negotiating with three of them to minimize the administration cost. *See* Ex. 2 Werts Decl. at ¶32. The parties have agreed to engage Simpluris to administer the settlement whose costs will not exceed $207,478. *See* Ex. 2 Werts Decl. at ¶33; Ex. 3 Simpluris Bid. These expenses will leave at least $1,532,522 to be distributed to the class members. *See* Ex. 2 Werts Decl. at ¶34. Importantly, there is no provision in the settlement agreement for any of the settlement fund to revert to Walmart. *Id.* at ¶35. Given the class size of 79,320 employees, the average payout will be $19.32 ($1,532,522 ÷ 79,320). *Id.* at ¶36. Individual payments will range from $0.93 to class members who only worked during a single period during the class period to at least $47.53 for those who worked throughout the time Walmart was conducting COVID screenings. *Id.* at ¶37. After

reasonable efforts to reach class members have been exhausted, the funds from any uncashed checks will be redistributed to those class members who cashed their initial settlement check, hence the above-quoted figures represent the minimum payments made available to individual class members; their ultimate payout will almost certainly be higher. *Id.* at ¶39.

## ARGUMENT

As this Court has recognized, preliminary approval entails an evaluation of four factors: "whether the proposed settlement [1] appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiency, [3] does not improperly grant preferential treatment to class representatives or segments of the class and [4] falls within the range of possible approval." *Rodriguez*, 2020 WL 6882844, at *6 (quotation and citation omitted); *accord, Horton v. USAA Cas. Ins. Co.,* 266 F.R.D. 360, 363 (D. Ariz. 2009).

## I.    The Court has already certified the class.

Oftentimes, the preliminary approval stage primarily concerns the appropriateness of class certification as a prerequisite to substantively reviewing the proposed settlement. *See Garrett v. Advantage Plus Credit Reporting Inc.*, Case No. CV-21-02082-PHX-DJH, 2023 WL 5806408, at *2 (D. Ariz. Sept. 6, 2023) (describing preliminary approval of pre-certification settlement). Here, the Court and the Parties have the benefit of having fully litigated Walmart's dispositive motion arguments and the question of class certification. *See* Ex. 2 Werts Decl. at ¶39. The proposed settlement class here is the same as certified by the Court in its July 11, 2023 Order. *See* Dkt. 80. Moreover, the practice challenged in this case was discontinued in February 2022, prior to the Court taking up class certification. *See* Ex. 2 Werts Decl. at ¶40. As such, the Court need not revisit the Rule 23 factors anew here. *See Munoz v. Giumarra Vineyards Corp.,* Case No. 1:09-cv-00703-AWI-JLT, 2017 WL 1293240, at *5 (E.D. Cal. Mar. 24, 2017) (explaining that a court need not re-examine the Rule 23 requirements when the Court has previous certified a class and there has been no

change in circumstances.).

**II.    The Court should preliminarily approve the proposed settlement**

As explained below, the settlement now before the Court easily meets the four *Rodriguez/Horton* factors quoted above.

### A.    The Settlement is the product of good faith, arm's-length negotiations among experienced counsel facilitated by a private mediator.

As the Settlement was only reached after complete discovery and full motion practice, Plaintiffs and Defendant were able to fully assess the strength of their respective claims and defenses prior to settlement. *See* Ex. 2 Werts Decl. at ¶¶ 13–23, 42. Further, the Settlement was reached through arms' length negotiations through experienced counsel at the end of a day-long mediation with an experienced wage and hour mediator. *Id.* at ¶¶ 25, 41. Consequently, the circumstances surrounding the Parties' settlement negotiations support a finding that the Settlement is fair. *Id.* at ¶¶ 50–52; *see, e.g., Satchell v. Fed. Express Corp.*, Case Nos. C03–2659 SI, C 03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Edenborough v. ADT, LLC*, Case No. 16-cv-02233-JST, 2017 WL 4641988, at *8 (N.D. Cal. Oct. 16, 2017) ("The Court concludes that the negotiations and agreement were non-collusive. As Plaintiffs note, the parties reached agreement on settlement terms following considerable discovery and two separate days of mediation before an experienced mediator. These facts support the conclusion that the settlement is non-collusive and likely to benefit the class members.") (citing *Harris v. Vector Mktg. Corp.*, Case No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (explaining that use of an experienced mediator "suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel")).

Furthermore, Class Counsel have experience prosecuting wage-and-hour cases

like this one and have unequivocally concluded that the Proposed Settlement is fair, reasonable, and adequate. *See* Ex. 2 Werts Decl. at ¶¶ 50–52. Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See Wren v. RGIS Inventory Specialists*, Case No. C–06–05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining.") (quoting *Riker v. Gibbons*, Case No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010)); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989) (noting that "[c]ounsels' opinions warrant great weight both because of their considerable familiarity with this litigation and because of their extensive experience in similar actions").

### B. The Settlement has no obvious deficiencies.

Obvious deficiencies in a settlement agreement include "any subtle signs that class counsel have allowed pursuit of their own self-interests to infect the negotiations." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594 (9th Cir. 2021) (quoting *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1043 (9th Cir. 2019)). The Ninth Circuit has identified three such "subtle signs," which it refers to as the *Bluetooth* factors: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a clear-sailing arrangement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class." *McKinney-Drobnis*, 16 F.4th at 607–08 (citation omitted); *In re Bluetooth Headset Prods. Liab. Lit.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotation and citation omitted).

Here, the proposed settlement has no obvious deficiencies. Class Counsel will seek a common fund fee award not to exceed the Ninth Circuit's 25% benchmark. *See* Ex. 1 Settlement Agreement, at ¶24; *see generally Williams v. MGM-Pathe Commc'ns*

*Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997); *see also, e.g., Edenborough*, 2017 WL 4641988, at *8 ("The Plaintiffs' ... request for 25% of the total settlement amount matches the 25% benchmark established by the Ninth Circuit."). There is no clear sailing provision in the final agreement. *See* Ex. 1 Settlement Agreement, ¶24. Finally, the settlement provides direct monetary relief without any claims process.

Every eligible Settlement Class Member will receive an agreed percentage (just under 50%) of whatever they would have been entitled to had they litigated and prevailed on their claim.[1] Ex. 2 Werts Decl. at ¶28. Moreover, there is no potential reversion of any settlement funds to Walmart. *Id.* at ¶35. Any settlement funds that cannot be delivered to class members will, if economically feasible to do so, be redistributed to Participating Class Members. *Id.* at ¶38. And at the conclusion of administration, any remaining funds will be paid into the Arizona Unclaimed Property Fund in the name of the participating class member to whom such funds had been allocated. *Id.* The proposed settlement bears no obvious deficiencies.

### C. The Settlement does not provide preferential treatment to the class representatives.

The Class Representatives are treated the same under the Proposed Settlement and Plan of Allocation as every other member of the Settlement Class, except for a Court approved general release payment to each plaintiff of the sort typically

---

[1] The only caveat to this is as to the subset of class members who worked on April 10, 2020 and who, under the Court's summary judgment order, were potentially able to recover additional damages for their unpaid work on that day. Ex. 2 Werts Decl. at ¶43. While plaintiffs were able to present aggregate evidence to support certification of that claim as a subclass, to identify and distribute funds separately to those individual class members would have required a claims process because there are no records identifying those individuals. *Id.* at ¶44. Given the high cost of a claims process and the relatively modest additional damages at issue on that one day during the overall class period, Class Counsel determined that it is in the best interest of the class to not seek to differentiate the April 10 subclass in the Proposed Settlement. *Id.* at ¶45.

awarded in class litigation, not to exceed $5,000. *See* Ex. 1 Settlement Agreement at ¶25; Ex. 2 Werts Decl. at ¶30. These payments are consideration for the broad general releases to be executed by the Class Representatives and an acknowledgment of their service to the class in securing the relief obtained in the settlement. *See* Ex. 2 Werts Decl. at ¶30. Such service awards are reasonable. *See Garrett,* 2023 WL 5806408 at *10 (approving $5,000 service award); *see also Rodriguez v. West Publg' Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases."); *Congdon v. Uber Techs., Inc.*, Case No. 16-cv-02499-YGR, 2019 WL 2327922, at *9 (N.D. Cal. May 31, 2019) ("The Ninth Circuit has repeatedly held that $5,000 is a reasonable amount for an incentive award.") (collecting cases).

**D.    The proposed relief is well-within the range of possible approval.**

The Settlement in this case is more than adequate when considering the range of possible recoveries for the Settlement Class, the number of procedural and merits-based hurdles between Plaintiffs and a final judgment, the significant uncertainties of a final judgment for Plaintiffs, and Defendant's proven intent to rigorously defend this case at every stage.

To determine whether a settlement "falls within the range of possible approval," the Court focuses on "substantive fairness and adequacy," and "consider[s] plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007). Here, Walmart denies any wrongdoing, fault, liability or damage to Plaintiffs and members of the Settlement Class, denies that it committed any violation of law or breach of duty, denies that it acted improperly in any way, and contends that the case has no merit. *See* Order (Dkt. 78) at 2–4; Ex. 1 Settlement Agreement at ¶20. Walmart has also argued that certification of a class is improper, and that it will be impossible for Plaintiff to prove damages. *Id.; see also* Rule 23(f) Pet., Case No. 23-80065 (9th Cir. July 25, 2023). Plaintiffs, on the other hand, believe the claims have merit, but recognize the inherent risks of litigating their claims through trial and potential

appeals. *See* Werts Decl. at ¶¶ 50–52. The Settlement, in contrast, provides certainty of recovery. There is a very real risk that the class would receive a worse outcome through continued litigation, trial, and appeal.

Here, the Proposed Settlement is tailored to afford an immediate cash recovery for Settlement Class Members who were subject to Walmart's COVID screening process. *See* Ex. 2 Werts Decl. at ¶¶ 28, 42. The monetary relief is adequate based on the hurdles that would be faced if litigation were to continue. Plaintiffs' best day at trial on the remaining claims would have been a verdict of just over $5,000,000. *Id.* at ¶28. The settlement fund created here equates to just under 50% of that best day figure. *Id.* Net of the requested fees and expenses, the class will be distributed approximately 30% of their best day. *Id.* This is well within the range of settlements approved it this Court. *See, e.g., Zwicky v. Diamon Resorts Inc.*, Case No. CV-20-02322-PHX-DJH, 2023 WL 5751465, at *6 (D. Ariz. Sept. 6, 2023) (preliminarily approving a settlement resulting in a 27% net recovery and citing a case approving a 24% net recovery). In short, the proposed settlement is well within the range of approvable settlements.

**E.      The proposed settlement is otherwise fair, adequate, and reasonable.**

Finally, at the preliminary approval stage, the Court may preview the factors that will ultimately inform final approval. *See Harris*, 2011 WL 1627973, at *9, citing *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Here, the parties' formal and informal discovery exchanges, spanning thousands of pages of documents and millions of electronic records, and the fully briefed and ruled-on motions for summary judgment and class certification have provided the parties a strong sense of the relative strength of their respective claims and defenses. Given (1) the expense and length of time necessary to prosecute the Action through trial; (2) the uncertainty of outcome at trial and the possibility of an appeal by either side following the trial; (3) the possibility that the court's certification order could be modified on

interlocutory appeal; and (4) the inevitable proof problems on the claims at issue, Plaintiffs faced the risk of zero recovery. *See* Werts Decl. at ¶¶ 50–52. Furthermore, if this litigation does not settle and instead proceeds to judgment, review by the Ninth Circuit is inevitable no matter how this Court rules at the trial level. Considering the overall risks, expense, and significant delay associated with continued litigation, the Proposed Settlement is a fair, reasonable, and adequate resolution of the class claims. *Id.* ¶¶ 50–52.

**III.    The Court should approve the means and form of notice to the class.**

Rule 23 requires the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128-29 (9th Cir. 2017) (citing Rule 23(c)(2)(B)) (emphasis in original). To satisfy due process considerations, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

The Class Notice proposed here meets all the requirements of Rule 23(c)(2)(B) and due process. *See* Ex. 4 Proposed Notice. It clearly and concisely states in plain, easily understood language: (1) information regarding the nature of the Action; (2) the definition of the Settlement Class; (3) a summary of the substance of the Settlement, including Walmart's denial of liability; (4) the amount of attorneys' fees and costs requested; (5) the Class Member's total number of Pay Periods; (6) the aggregate number of Pay Periods worked by all Class Members during the Class Period; (7) the formula for calculating the Class Member's Individual Settlement Payment and an estimate of the Class Member's Individual Settlement Payment; (8) the procedure and time period for objecting to the Settlement and participating in the Final Approval hearing; (9) a statement that the Court has preliminarily approved the Settlement; (10) a statement that Class Members will release the Released Class Claims unless they opt out of the Settlement Class; and (11) information regarding

the opt-out procedure. *See* Werts Decl. at ¶46, *see, e.g., Rodriguez*, 2020 WL 6882844, at *8 (approving similar notice).

Finally, notice will be sent to class members by first-class mail and email. *See* Werts Decl. at ¶47. The dissemination of notice by direct mail and email amply satisfies the requirements of due process and Rule 23(c)(2). *See Zwicky,* 2023 WL 5751465 at *7. Since the Settlement Class Members are all current or former Walmart employees, Walmart has reliable contact information. *See* Werts Decl. at ¶48. In short, the notice program proposed here is more than sufficient.

## CONCLUSION

Plaintiffs respectfully request that the Court (a) preliminarily approve the Proposed Settlement and Plan of Allocation for purposes of issuing notice to Settlement Class Members; (b) schedule the Final Approval Hearing (at least 150 days from the date of the Preliminary Approval Order); and (c) approve the form, content, and proposed means of communicating the Class Notice.

Plaintiff has lodged a proposed form of Order in compliance with LRCiv. 7.1(b)(2).[2]

Respectfully submitted,
LEAR WERTS LLP

*/s/ Todd C. Werts*
Todd C. Werts, Ariz. Bar No. 35380
Bradford B. Lear, *pro hac vice*
103 Ripley Street
Columbia, MO 65201
Telephone:  573-875-1991
Facsimile:  573-279-0024
Email:  werts@learwerts.com
Email:  lear@learwerts.com

Attorneys for Plaintiffs

---

[2] The proposed order is patterned after the order granting preliminary approval in *Medina v. PracticeMax, Inc.*, Case No. CV-22-01261-PHX-DLR (Oct. 27, 2023) (Dkt. 40).