BRADFORD B. LEAR (*pro hac vice*)
TODD C. WERTS (Bar No. 035380)
**LEAR WERTS LLP**
103 Ripley Street
Columbia, MO 65201
Telephone: 573-875-1991
Email: lear@learwerts.com
Email: werts@learwerts.com

*Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathy Arrison and Tristan Smith, individually, and on behalf of a Class of others similarly situated, | CASE NO. 2:21-CV-00481-SMB |
| Plaintiffs, | **PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| Walmart, Inc. and Wal-Mart Associates, Inc. | |
| Defendants. | |

## TABLE OF CONTENTS

I.      Introduction.............................................................................................1

II.     Procedural History and Discovery Obtained.......................................1

III.    Key Terms of the Settlement ...............................................................3

IV.     The Court Should Grant Final Certification of the Settlement Class..............4

V.      The Settlement Meets Rule 23 Standards for Final Approval........................4

        A.      Plaintiffs and Class Counsel have adequately represented the class. ...5

        B.      The settlement was negotiated by highly experienced Class
                Counsel who view it as fair, reasonable, and adequate.........................6

        C.      The settlement amount is substantial and favors final approval. ..........6

        D.      The risk, expense, complexity, and duration of further
                litigation favors granting approval of the settlement. ...........................7

        E.      The remaining Rule 23(e)(2) factors favor settlement........................8

VI.     The Requested Service Awards are Fair and Reasonable.................................9

VII.    Approval of Class Counsel's Unopposed Fee Request is Warranted............10

        A.      The requested fees are reasonable under a common fund approach...11

        B.      The case was risky and complex........................................................11

        C.      Counsel are skilled, experienced, and provided
                excellent representation....................................................................12

        D.      The contingent nature of the fee........................................................13

        E.      Though not required, a lodestar cross-check confirms the
                requested fees are fair and reasonable...............................................13

        F.      The views of the Class Members .......................................................15

VIII.   Class Counsel's Expenses are Reasonable ......................................16

IX.     The single objection should be overruled.........................................16

X.      Conclusion ............................................................................................17

ii

TABLE OF AUTHORITIES

*Am. C.L. Union of Ariz. v. United States Dep't of Homeland Sec.*,
    No. CV-17-01083-PHX-DJH,
    2020 WL 1494328 (D. Ariz. Mar. 27, 2020). .................................................14

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997).............................................................................4, 9

*Bellinghausen v. Tractor Supply Co.,*
    306 F.R.D. 245 (N.D. Cal. 2015).................................................................13

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980).................................................................................11

*Burritt v. NutraCea*,
    CV-09-00406-PHX-FJM, 2010 WL 8759338 (D. Ariz. Oct. 4, 2010)..........17

*Catala v. Resurgent Cap. Servs. L.P.*,
    No. CIV.08CV2401 NLS, 2010 WL 2524158 (S.D. Cal. June 22, 2010).......8

*Cicero v. DirectTV, Inc.*,
    No. EDCV 07-1182, 2010 WL 2991486  (C.D. Cal. July 27, 2010)..............9

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992)..................................................................8

*Congdon v. Uber Techs., Inc.*, No.
    16-cv-02499-YGR, 2019 WL 2327922 (N.D. Cal. May 31, 2019) ..............10

*Corker v. Costco Wholesale Corp.,*
    No. 2:19-CV-00290-RSL,
    2021 WL 2790518 (W.D. Wash. June 25, 2021) ..........................................15

*Covillo v. Specialtys Café,*
    No. C-11-00594 DMR, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014) ...........13

*Fox v. Vice*,
    563 U.S. 526, 838 (2011)........................................................................14

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)................................................................4, 11

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994)................................................................16

*In re Banner Health Data Breach Litigation*,
    No. 2:16-cv-02696-SRB,
    2020 WL 12574227 (D. Ariz. Apr. 21, 2020)................................17

*In re Cobra Sexual Energy Sales Pracs. Litig.*,
    No. 2:13-CV-05942-ABEX, 2021 WL 4535790 (C.D. Cal. Apr. 7, 2021) .....8

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019)..........................................................13

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007).........................................16

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000)............................................................7

*In re Nexus 6P Prod. Liab. Litig.*,
    No. 17-CV02185-BLF, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019)........15

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008)..........................................15

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015)..........................................................13

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005)....................................................13–14

*In re Toys R US-Delaware, Inc.—Fair & Accurate Credit Transaction*
    *Acts (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014) ..........................6

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
    720 F. Supp. 1379 (D. Ariz. 1989).................................................8

*Jarrell v. Amerigas Propane, Inc.*,
    No. 16-CV-01481-JST, 2018 WL 1640055 (N.D. Cal. Apr. 5, 2018)...........16

*Koch v. Desert States Employers & UFCW Unions Pension Plan*,
    No. CV-20-02187-PHX-DJH,
    2021 WL 6063534 (D. Ariz. Dec. 22, 2021) .........................................12, 15

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Lane v. Facebook, Inc.,*
        696 F.3d 811 (9th Cir. 2012) .............................................................................4

*Linney v. Cellular Alaska P'ship*,
        151 F.3d 1234 (9th Cir. 1998) ............................................................................7

*Ludlow v. Flowers Foods, Inc.*,
        No. 3:18-cv-01190-JO-JLB, 2024 WL 1162049 (S.D. Cal. Mar. 18, 2024) ...9

*Mace v. Van Ru Credit Corp.,*
        109 F.3d 338 (7th Cir. 1997) ..............................................................................9

*McKenzie v. Fed. Exp. Corp.*,
        No. CV 10-02420 GAF, 2012 WL 2930201 (C.D. Cal. July 2, 2012) ............8

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco,*
        688 F.2d 615 (9th Cir. 1982) ..........................................................................4, 6

*Rodriguez v. QS Next Chapter LLC,*
        No. CV-20-00897-PHX-DJH, 2021 WL 1307612 (D. Ariz. Apr. 7, 2021) .....4

*Rodriguez v. West Publ'g Corp,*
        563 F.3d 948 (9th Cir. 2009) ..............................................................................9

*Roe v. Jose Torres L.D. Latin Club Bar, Inc.*,
        No. 19-CV-06088-LB, 2020 WL 5074392 (N.D. Cal. Aug. 27, 2020) ..........7

*Roes, 1-2 v. SFBSC Management, LLC*,
        944 F.3d 1035 (9th Cir. 2019) ............................................................................4

*Rojas v. Zaninovich*,
        No. 1:09-CV-0705-AWI-JLT,
        2015 WL 3657172 (E.D. Cal. June 11, 2015) .................................................7

*Rosales v. El Rancho Farms*,
        No. 1:12-CV-01934-AWI, 2015 WL 4460918 (E.D. Cal. July 21, 2015).......7

*Sanchez v. Frito-Lay, Inc.,*
        No. 1:14-cv- 00797-DAD-BAM,
        2021 WL 1813190 (E.D. Cal. May 6, 2021) .........................................14, 15

*Schwarz v. Sec'y of Health & Hum. Servs.*,
        73 F.3d 895 (9th Cir. 1995) .............................................................................14

*Scovil v. FedEx Ground Package Sys., Inc.*,
　　No. 1:10-CV-515-DBH, 2014 WL 1057079 (D. Me. Mar. 14, 2014).............9

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
　　904 F.2d 1301 (9th Cir. 1990)........................................................11

*Staton v. Boeing*,
　　327 F.3d 938 (9th Cir. 2003)........................................................10

*Stern v. Gambello*,
　　480 Fed. Appx. 867 (9th Cir. 2012) .............................................14

*Vizcaino v. Microsoft Corp.,* 290 F.3d 1043 (9th Cir. 2002)..............................11, 13

*Wal-Mart Stores, Inc. v. Dukes*,
　　564 U.S. 338 (2011)........................................................4

*Williams v. MGM-Pathe Commc'ns Co.*,
　　129 F.3d 1026 (9th Cir. 1997)........................................................11

*Zhu v. Taronis Techs. Inc.*,
　　CV-19-04529-PHX-GMS, 2021 WL 871775 (D. Ariz. Mar. 9, 2021)....15, 16

Fed. R. Civ. P. 23........................................................5

Federal Judicial Center, *Judges' Class Action Notice and Claims
　　Process Checklist and Plain Language Guide* (2010) ....................................3

Rothstein & Wilging, *Managing Class Action Litigation: A Pocket Guide for Judges*
(Federal Judicial Center 2005)  14

## I.    Introduction

This wage and hour class action has been pending for over three years (since March, 2021) and covers approximately 81,000 employees who worked at Walmart's 112 locations in Arizona. After spending over 1,300 hours on the litigation, completing discovery, fully litigating summary judgment and class certification, fully briefing Walmart's petition for leave to file Rule 23(f) appeal, and conducting a full day mediation, the parties reached an agreement to settlement this case for $2,500,000. On February 16, 2024, the Court granted preliminary approval of the settlement (Dkt. No. 95). And, in accordance with that Order, notice was provided to the class members. That notice explained the settlement, its planned distribution, and its provision for attorney's fees (25% of the common fund equating to $625,000), costs not to exceed $125,000, and service payments ($5,000 per named plaintiff). Plaintiffs now move for final approval.

Plaintiffs' Counsel respectfully submit that the proposed settlement is patently fair and reasonable, with an average recovery of approximately 50% of each plaintiffs' potential post-summary judgment claim. And the fees, costs, and service payments requested are well within this Court's standard practice. For these reasons, and the reasons more fully set forth below, Plaintiffs respectfully request that the Court grant final approval of the settlement.

## II.    Procedural History and Discovery Obtained

This case was initiated by Complaint filed on March 22, 2021 (Dkt. No. 1). Plaintiffs alleged Walmart violated Arizona law because it failed to pay wages for time spent in COVID-19 screening and failed to keep accurate records of related work time. *See* Am. Complaint (Dkt. No. 26) at ¶¶ 57–77. Accordingly, they asserted claims for failure to pay wages under the Arizona Wage Act, for failure to keep accurate records, and for unjust enrichment. *Id.*

Walmart filed, and the Court overruled, a Rule 12 motion to dismiss (Dkt. Nos. 27–29, 33). Thereafter, the parties conducted fact discovery consisting of interrogatory answers, the production of relevant documents and over seven million line-item records

of employee data (representing a roughly 15% sample), seven fact depositions, four expert reports, and three expert depositions. *See* Declaration of Todd C. Werts ("Werts Decl"), ¶¶ 13–16.

After completing discovery, the parties briefed and argued Plaintiffs' Motion for Class Certification and Defendants' Motion for Summary Judgment (Dkt. Nos. 55–58, 65–68, 71–73, 77). On July 10, 2023, the Court granted, in part, Walmart's motion for summary judgment (Dkt. No. 78). That order eliminated Plaintiffs' claims for record keeping violations and most of Plaintiffs' Claims for treble damages, greatly reducing their potential damages. *Id.* On July 11, 2023, the Court granted class certification as to all remaining claims (Dkt. 79). Then, on July 25, 2023, Walmart filed its petition to the Ninth Circuit requesting leave to appeal the certification order under Fed. R. Civ. Proc. 23(f). *See Arrison v. Walmart Inc.*, Case No. 23-80065 (9th Cir), Dkt. No. 1). On August 4, 2023, Plaintiffs' filed their answer in opposition to that petition (9th Cir. Dkt. No. 2).

Shortly after fully briefing the Rule 23(f) petition, the parties agreed to mediate the case with experienced wage and hour mediator, Frank Neuner from St. Louis, Missouri. *See* Werts Decl. ¶25. That mediation resulted in a settlement that was preliminarily approved by this Court on February 16, 2024 (Dkt. 95).

Since preliminary approval, the class notice program began on April 15, 2024. *See* Werts Decl. ¶30. The Class Notice described in plain language the terms of the Settlement, with personalized estimates of individual Settlement Awards, how those amounts were calculated based upon that employes' tenure during the class period, the considerations leading Class Counsel to conclude the Settlement is fair and adequate, the percentage and exact amount of attorneys' fees Class Counsel is seeking, along with the requested service payment and approximate amount of costs sought, the procedure for objecting to the Settlement, and the date and location of the Final Fairness Hearing. See Exhibit 4 to Declaration of Todd C. Werts filed in support of preliminary approval, Dkt. No.. 93-1 at 47 of 59. The Notice also contains Class Counsel's contact information. *Id.*; Werts Decl. ¶31.

During the notice process, 81,578 notices were mailed. *Id.* at ¶33. Of those 13,698 were returned but 11,756 were successfully remailed. *Id.* at ¶34. As such, all but 1,942 members of the class received direct mail notice of the settlement. *Id.* at ¶35. This yields notice to 97.6% of the class, well above the 70-95% benchmark for reasonability published by the Federal Judicial Center. *See Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010) at 3, https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf (last visited July 1, 2024). There have been 45 opt-outs and one objection. Werts Decl. ¶37.

## III.    Key Terms of the Settlement

Class Counsel and Plaintiffs have agreed to a Settlement that provides a meaningful recovery to the Class Members of their remaining claims. Werts Decl. ¶40. Class Counsel respectfully submits that the terms and conditions of the Settlement are fair, reasonable, and constitute an excellent result for Class Members, particularly in light of the challenges faced in this case. *Id.* at ¶¶ 39–41. Here, the net settlement fund will, if final approval is granted, be distributed to class members based on the number of weeks they worked during the class period. *Id.* at ¶42. Those class members who only worked one week, will receive just under $1.00 while those working the full class period will receive over $47. *Id.* at ¶44. An important feature of the agreed distribution plan is that no portion of the settlement fund can revert to Walmart. *Id.* at ¶45. Rather, if there remain any funds after the initial distribution, the funds from any uncashed checks will be redistributed to those class members who cashed their initial settlement check. *Id.* at ¶46.

In addition to the class members' distribution, Plaintiffs also seek approval of service payments to both named plaintiffs in the amount of $5,000 and payment the settlement administrator of up to $207,478 for its work. *Id.* at ¶¶ 47–48. Finally, Class Counsel requests an attorney fee of 25% of the common fund created by the settlement and reimbursement of up to $118,160.55 in out-of-pocket expenses incurred by class counsel prosecuting the case. *Id.* at ¶¶49, 69.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.    The Court Should Grant Final Certification of the Settlement Class**

Cognizant of its duty to scrutinize class certification for settlement purposes, *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997) and *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011), the Court in its Preliminary Approval Order reaffirmed its prior findings regarding Plaintiff's satisfaction of each requirement under Rule 23(a) and 23(b)(3). *See* Order (Dkt. No. 95) ¶1. Nothing has changed since either the Court's original certification (Dkt. No. 80), or preliminary approval (Dkt. No. 95) to undermine the soundness of the Court's ruling that certification of the Settlement Class is fully warranted here. Werts Decl. ¶50. The Court should, therefore, grant final certification of the Settlement Class. *See, e.g., Rodriguez v. QS Next Chapter LLC,* No. CV-20-00897-PHX-DJH, 2021 WL 1307612, at *1 (D. Ariz. Apr. 7, 2021) (granting final certification of settlement class premised on unchanged showing made in support of preliminary certification).

**V.    The Settlement Meets Rule 23 Standards for Final Approval**

"Although Rule 23 imposes strict procedural requirements on the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure that it is 'fair, adequate, and free from collusion.'" *Lane v. Facebook, Inc.,* 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon,* 150 F.3d at 1027); *see also Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982) (reasoning a class action settlement should be reviewed under "the universally applied standard [of] whether the settlement is fundamentally fair, adequate and reasonable"). Importantly, this case was settled after a contested motion for class certification. (Dkt. No. 80). As such, the Court need not subject the settlement to the heightened scrutiny appropriate in cases that settle pre-certification. *See Roes, 1-2 v. SFBSC Management, LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (explaining that pre-certification settlements require "a more probing inquiry than may normally be required under Rule 23(e)").

Rule 23(e)(2) includes specific factors to be considered when approving a class action settlement, including whether:

    (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)    any agreement required to be identified under Rule 23(e)(3); and

    (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23. Each of these factors militates in favor of final approval.

### A.    Plaintiffs and Class Counsel have adequately represented the class.

Class Counsel and the named plaintiffs have represented the Class Members zealously and undertook risk and extensive work that benefited the Class Members. Werts Decl. ¶51. Class Counsel invested more than 1,300 hours of attorney time and advanced over $118,000 in litigation expenses on behalf of the Class, responding to every argument and defense mounted by Walmart, a company generally considered to be the largest in America. *Id.*

For their part, the named plaintiffs put the interests of the Class Members over their own personal interests by pursuing the claims and settlement on a class basis instead of just engaging with Walmart to achieve individual settlements. This almost certainly resulted in additional risk to, and a lengthy delay in, resolving their own claims. *Id.* at ¶52. They performed extensive work including gathering documents and information, speaking to other putative Class Members, and regularly communicated with Class Counsel to further the litigation. *Id.* at ¶53.

5

Class Counsel and the Named Plaintiffs have more than adequately represented the interests of the Class Members.

**B.    The settlement was negotiated by highly experienced Class Counsel who view it as fair, reasonable, and adequate.**

As set forth in the Werts Declaration, Mr. Werts and the firm of Lear Werts LLP have extensive wage and hour, and class action experience. Werts Decl. ¶¶6, 54–55. Class Counsel believes the arms-length resolution of this vigorously contested case, that was crafted with the help of an experienced mediator, represents a fair and equitable resolution for the Settlement Class. *Id.* at ¶56. Indeed, Walmart has disputed Plaintiffs' claims at every stage in this case. *Id*. Class Counsel has carefully analyzed the issues and evidence, the risks to the Settlement Class in continuing the litigation, the total potential damages, and the benefits and detriments of the Settlement. *Id.* at ¶57. Based on an exhaustive review of the relevant factors in this case, Class Counsel is satisfied that the Settlement is fair, reasonable, adequate, and in the best interests of the class. *Id.*

**C.    The settlement amount is substantial and favors final approval.**

The Ninth Circuit has previously noted that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. [A] proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what might have been achieved[.]" *Officers for Just.*, 688 F.2d at 625. "Estimates of a fair settlement figure are [to be] tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig*., 295 F.R.D. 438, 453 (C.D. Cal. 2014). As set forth above and in Plaintiffs' Motion for Preliminary Approval (Dkt. No. 93), the $2,500,000 Settlement Fund is substantial and will provide a significant percentage (*i.e.,* approximately 50%) of the class's potential damages at trial as calculated by the Plaintiffs' expert. Werts Decl. ¶¶ 29, 44. Of course, Defendants maintain that Class Members were

6

not owed anything. This settlement thus eliminates the risk that Class Members will recover nothing.

The Settlement amount and the percentages of individual damages recoveries here are fair, reasonable and adequate in light of the uncertainties of continued litigation. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), as amended (June 19, 2000) (approving a settlement that was 42% of estimated damages and stating that even using the objectors' damages estimates, a settlement of 14% would be fair); *Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, No. 19-CV-06088-LB, 2020 WL 5074392, at *6 (N.D. Cal. Aug. 27, 2020) (settlement of approximately 7.07% of the maximum potential recovery "provides good value" and collecting cases with settlement payments of between 1.5% and 8% of maximum potential recoveries); *Rosales v. El Rancho Farms*, No. 1:12-CV-01934-AWI, 2015 WL 4460918, at *14 (E.D. Cal. July 21, 2015) (approving a settlement with a class payment that was roughly 25% of the maximum potential recovery); *Rojas v. Zaninovich*, No. 1:09-CV-0705-AWI-JLT, 2015 WL 3657172, at *12 (E.D. Cal. June 11, 2015) (approving a settlement with a class payment that was roughly 50% of the maximum potential recovery); *see also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (citation omitted).

**D.     The risk, expense, complexity, and duration of further litigation favors granting approval of the settlement.**

There is substantial litigation risk if this case were to continue through Walmart's Rule 23(f) petition, trial, and likely appeals. Walmart denies liability and has proven its willingness to oppose class certification to the Ninth Circuit. Werts Decl. ¶¶ 18–23. The Settlement eliminates the risks and delay of trial and still provides approximately 50% of class members' maximum potential recovery on a gross basis (before fees, costs and a case contribution award for Named Plaintiff). *Id.* at ¶29.

The risks, delay, and expense that will be avoided by the Settlement are significant. If the Settlement is not approved, litigating this case through trial and appeals will likely take years more. *Id.* at ¶58. In addition to liability issues, the damage issues that must be determined are significant. *Id.* And such litigation would entail significant additional expenses beyond the more than $118,000 that Class Counsel has incurred to date and thousands of hours of additional attorney and paralegal time. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1390 (D. Ariz. 1989), *aff'd sub nom. Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ("The uncertainty of victory and the certainty of ever-increasing costs, both monetary and otherwise, thus, validate the undertaking of serious settlement negotiations."); *In re Cobra Sexual Energy Sales Pracs. Litig.*, No. 2:13-CV-05942-ABEX, 2021 WL 4535790, at *6 (C.D. Cal. Apr. 7, 2021) ("Here, the Settlement eliminates these risks by ensuring the Class a recovery that is "'certain and immediate, eliminating the risk that class members would be left without any recovery ... at all.'").

The significant risks faced by the Class with respect to maintaining class action certification also favor granting final approval. While Plaintiffs believe they would ultimately prevail, Walmart maintained during the parties' mediation discussions that differences among Class Members could be proven at trial to defeat certification. Werts Decl. ¶59. The risk that the class could be decertified weighs further in favor of final approval of the Settlement. *See, e.g., McKenzie v. Fed. Exp. Corp.*, No. CV 10-02420 GAF PLAX, 2012 WL 2930201, at *4 (C.D. Cal. July 2, 2012) ("[S]ettlement avoids all possible risk [of decertification]. This factor therefore weighs in favor of final approval of the settlement."); *Catala v. Resurgent Cap. Servs. L.P.*, No. CIV.08CV2401 NLS, 2010 WL 2524158, at *3 (S.D. Cal. June 22, 2010) ("The avoidance of risk of maintaining class action certification throughout trial favors settlement of this action.").

### E.    The remaining Rule 23(e)(2) factors favor settlement

Here, the proposed settlement does not have a claims process. Rather, class members' settlement payments will be calculated based on objective data obtained from

8

Walmart's own payroll data. Werts Decl. ¶¶ 42–43.  *See, e.g., Ludlow v. Flowers Foods, Inc.*, No. 3:18-cv-01190-JO-JLB, 2024 WL 1162049, *7 (S.D. Cal. Mar. 18, 2024) (granting final approval of wage and hour class action settlement where allocation based on objective criteria); *see also Cicero v. DirectTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, *5 (C.D. Cal. July 27, 2010) (approving distribution based on number of weeks worked). This ensures that class members are treated equitably.

Each class members' notice was tailored to that individual and provided the class member with the number of weeks he or she were recorded as having worked and an estimate of his or her minimum payout. *Id.* at ¶31. Class members had the opportunity to dispute their projected allocation. *Id.* To-date only two class members have lodged disputes regarding the number of weeks they worked. *Id.* at ¶37. And there is no mechanism in this settlement for any of the settlement fund to revert to Walmart. *Id.* at ¶45. As such, the method for distributing relief here is highly effective.

As discussed below, the requested service payments to the named plaintiffs and Class Counsel's fee request are well-within the range of fees typically awarded in settlement like this and are reasonable. *Id.* at ¶45.

Finally, there are no side agreements other than the Settlement Agreement presented at preliminary approval. *Id.* at ¶¶ 79–81.

In short, this settlement exhibits all of the hallmarks of a settlement that should be granted final approval.

## VI.    The Requested Service Awards are Fair and Reasonable

"Because a named plaintiff is an essential ingredient of any class action, an incentive or service award can be appropriate to encourage or induce an individual to participate in the suit." *Scovil v. FedEx Ground Package Sys., Inc.,* No. 1:10-CV-515-DBH, 2014 WL 1057079, at *6 (D. Me. Mar. 14, 2014) (citation omitted). Service awards "are discretionary and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney

9

general." *Rodriguez v. West Publ'g Corp,* 563 F.3d 948, 958–59 (9th Cir. 2009) (internal citation omitted). As the Supreme Court has reiterated, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods.,* 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997)).

In the Ninth Circuit, an incentive award of $5,000.00 is presumptively reasonable. *Congdon v. Uber Techs., Inc.,* No. 16-cv-02499-YGR, 2019 WL 2327922, at *9 (N.D. Cal. May 31, 2019) ("The Ninth Circuit has repeatedly held that $5,000 is a reasonable amount for an incentive award.") (collecting cases).

Here, Plaintiffs Kathy Arrison and Tristan Smtih were the only class representatives who undertook to prosecute claims on behalf of the Settlement Class. Werts Decl. ¶ 80.  They worked at different stores, providing evidence of the similarity of Walmart's challenged policies across different locations – a core question in this case. *Id.* They both assisted with several aspects of the litigation, including review of the Complaint and Amended Complaint, answering written discovery, sitting for depositions, monitoring the case, and were available by telephone at the private mediation. *Id.* at ¶79. Both voluntarily submitted themselves to the risks in commencing litigation as a named plaintiff, including the potential reputational notoriety often encountered when serving as such advocates. *Id.* at ¶80. As such, the Court should approve $5,000 service awards to the two named plaintiffs.

## VII.  Approval of Class Counsel's Unopposed Fee Request is Warranted[1]

Plaintiff's Counsel are entitled to a common fund fee award to compensate them for the benefits they generated on behalf of the Settlement Class. *See Staton v. Boeing*, 327 F.3d 938, 967 (9th Cir. 2003) ("Under the 'common fund' doctrine, 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his

---

[1] Counsel for Walmart reviewed this motion prior to its filing. Walmart is not opposed to the fee and expense awards requested herein.

client is entitled to a reasonable attorney's fee from the fund as a whole.'") (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

## A. The requested fees are reasonable under a common fund approach.

In determining the reasonableness of attorneys' fees in class action settlements, the district court has discretion to use either a percentage or lodestar method. *See Hanlon,* 150 F.3d at 1029. As the Ninth Circuit has explained, however, "the primary basis of the fee award remains the percentage method," while "the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050 (9th Cir. 2002) ("*Vizcaino II");* see also *Six (6) Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990) (approving calculation of attorneys' fees in common fund class action based on percentage of the total fund).

In class common fund cases, "'the 'benchmark' [fee] award is 25 percent of the recovery obtained,' with 20-30% as the usual range." *Vizcaino II,* 290 F.3d at 1047 (citation omitted). Under Ninth Circuit jurisprudence, this benchmark is applied to the value of the entire common benefit secured by class counsel rather than the amount actually paid to the class members. *See Williams v. MGM-Pathe Commc'ns Co.,* 129 F.3d 1026, 1027 (9th Cir. 1997) (holding that "the district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar").

Applying the Ninth Circuit's 25% benchmark to the $2,500,000 Settlement Common Fund here justifies a fee of $625,000. Werts Decl. ¶49.

## B. The case was risky and complex.

There can be no question that this case was risky for Class Counsel and its small firm. Werts Decl. ¶¶ 4–5, 51, 59. Taking on a case like this required a large investment of the firm's time and resources and, as a consequence, the risks Class Counsel undertook were large. *Id.* This is particularly true in litigating against a large corporation like Walmart. *Id.* at ¶51. Indeed, the risks undertaken by Class Counsel could weigh heavily

11

in favor of adjusting the benchmark upward here. *See, e.g., Koch v. Desert States Employers & UFCW Unions Pension Plan*, No. CV-20-02187-PHX-DJH, 2021 WL 6063534, *7 (D. Ariz. Dec. 22, 2021) (awarding 27% of the settlement ($2,146,500) as attorney's fees). But such an upward departure from the benchmark is not requested here. Rather, the parties agreed to a benchmark fee even though that will result in less than counsel's lodestar. Werts Decl. ¶76.  In sum, the complexity of the case and the risks and expense undertaken by Class Counsel in pursuing the claims diligently fully support the requested fee.

### C. Counsel are skilled, experienced, and provided excellent representation.

As set forth above, the subject matter of this case is highly technical. Class Counsel was required to have extensive knowledge of complex data-mining and statistical analysis, both to prepare Plaintiffs' expert report but to also cross examine and rebut Walmart highly-experienced experts. Werts Decl. ¶57. This case required Class Counsel to expend more than $118,000 to engage a statistician to produce a complete a damages analysis, conduct the necessary depositions, and prepare for and conduct the mediation undertaken by the parties. *Id.* at ¶78. The work performed in this case was extensive and required a great deal of skill.

Class Counsel worked on this matter for three years. Class Counsel undertook to obtain documents and data from Walmart. There were numerous conferences and communications necessary in order to get the documents and information Plaintiff needed to analyze claims and defenses, class certification, and damages. *Id.* at ¶13. The parties had several disputes about what was needed but, through mutual effort, resolved those disputes outside of the litigation process. *Id.* Defendants then retained their own expert witnesses who asserted that there were no damages available. *Id.* at ¶14. The skill and experience required to achieve the result here is substantial. It weighs heavily in favor of the requested fee award.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**D.      The contingent nature of the fee.**

Class Counsel agreed to take this case on a contingency basis where the Plaintiffs agreed to pay 35% of all amounts recovered for the litigation or 100% of a separately awarded fee amount, if greater. *Id.* at ¶49. Class Counsel also agreed to advance all expenses. *Id.* If Plaintiffs had not been able to achieve a settlement and had lost the case, Class Counsel would not have recovered any fees, would have foregone other potentially profitable litigation, and would have lost any costs advanced. *See Vizcaino II*, 290 F.3d at 1051 ("In common fund cases, 'attorneys whose compensation depends on their winning the case [] must make up in compensation in the cases they win for the lack of compensation in the cases they lose") (citation omitted). And while almost all of Class Counsel's work is contingent in nature, counsel has experienced losses where no fee was paid and all advanced expenses were lost. *Id.* at ¶¶ 5, 71. The risk of loss undertaken by Class Counsel on behalf of the class further supports the fee request.

**E.      Though not required, a lodestar cross-check confirms the requested fees are fair and reasonable.**

To confirm the reasonableness of a requested percentage fee award, the Court may in its discretion also conduct a lodestar "cross-check." *See Vizcaino II,* 290 F. 3d at 1050; *accord In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 949 (9th Cir. 2015); *Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 261–65 (N.D. Cal. 2015). If the multiplier falls within an acceptable range, it supports the conclusion that the percentage fees sought are, in fact, reasonable. *See Vizcaino II,* 290 F.3d at 1051; *see generally In re Hyundai & Kia Fuel Econ. Litig.,* 926 F.3d 539, 571–72 (9th Cir. 2019) (finding multipliers of 1.22 and 1.55 to be "modest or in-line with others we have affirmed").

In performing a lodestar cross-check, the Court need not undertake the burden of a tedious, line-by-line review of billing records as the "calculation need entail neither mathematical precision nor bean counting." *Covillo v. Specialtys Café,* No. C-11-00594 DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (quoting *In re Rite Aid Corp. Sec.*

*Litig.,* 396 F.3d 294, 306–07 (3d Cir. 2005)). Rather, the Court may rely on sworn lodestar summaries submitted by the attorneys. *Id.*

Indeed, the Supreme Court itself has counseled,

> trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Fox v. Vice*, 563 U.S. 526, 838 (2011); *see also Stern v. Gambello*, 480 Fed. Appx. 867, 870 (9th Cir. 2012) (unpublished) (finding review of fee and expense summaries sufficient); *Sanchez v. Frito-Lay, Inc.,* No. 1:14-cv- 00797-DAD-BAM, 2021 WL 1813190, at *10 (E.D. Cal. May 6, 2021) ("[C]ounsels' declarations are sufficient to establish the number of attorney and staff hours worked on this matter.") (citation omitted); Rothstein & Wilging, *Managing Class Action Litigation: A Pocket Guide for Judges* (Federal Judicial Center 2005) at 25, https://www.uscourts.gov/sites/default/files/classgde.pdf (last visited July 1, 2024) (same).

Reasonable hourly rates are determined by looking to "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) (citation omitted); *Am. C.L. Union of Ariz. v. United States Dep't of Homeland Sec.*, No. CV-17-01083-PHX-DJH, 2020 WL 1494328, at *5 (D. Ariz. Mar. 27, 2020). Class Counsel submits its lodestar calculation using rates varying from $700 per hour for senior partners with more than 20 years of experience, to $200 per hour for paralegal time. Werts Decl. ¶¶ 72. These rates are significantly lower than said counsel has been approved at in other venues and are consistent with rates charged by the firm in the mid-Missouri market. *Id.* at ¶¶ 68–71. Further, these rates appear to be at or lower than those submitted by counsel in multiple, recent class action cases in this district. *Id.* at ¶¶ 61–66. And they

appear in line with rates approved in this district a few years ago. *See Zhu v. Taronis Techs. Inc.*, CV-19-04529-PHX-GMS, 2021 WL 871775, *2 (D. Ariz. Mar. 9, 2021) (approving rates of "$700, $615, $355, $475, and $335" for counsel in 2021).

Here, Class Counsel has spent more than 1,300 hours prosecuting this case through drafting the instant motion.[2] Werts Decl. ¶¶ 73. Assuming Class Counsel's stated rates, this results in a total lodestar of $874,777.50. *Id.* at ¶76. Thus, the requested fee of $625,000 is a negative multiplier of 0.71 from the lodestar, strong indicia of reasonability. *See, e.g., Corker v. Costco Wholesale Corp.,* No. 2:19-CV-00290-RSL, 2021 WL 2790518, at *2 (W.D. Wash. June 25, 2021) (stating a negative multiplier "confirms the reasonableness of the requested fee"); *Sanchez,* 2021 WL 1813190, at *10 (finding the lodestar cross-check, which yielded a negative multiplier of approximately 0.85, supported the requested fee award); *Koch*, 2021 WL 6063534 at *7 (D. Ariz. Dec. 22, 2021) (approving lodestar cross-check multiplier of 4.0).

## F.    The views of the Class Members

It is also appropriate for the Court to consider the views of the class members in evaluating a common fund fee request. *See In re Nexus 6P Prod. Liab. Litig.*, No. 17-CV02185-BLF, 2019 WL 6622842, at *13 (N.D. Cal. Nov. 12, 2019) ("The reaction of the class may also be a determining factor in the determining the fee award."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (same).Thus far, out of the over 81,000 Class Members, all of whom were informed in the Class Notice of Plaintiff's intent to request a 25% common fund attorneys' fee, only a single Class Member objected to the settlement. Werts Decl. at ¶37; Dkt. No. 96. But that objection makes no mention of the requested attorney fee or service payments. *Id.* Lack of objection to the requested fee is evidence in support of the fee request. *See In re Nexus 6P Products Liability Litigation,* 2019 WL 6622842, at *13 ("The fact that no objections have been

---

[2] Of course, Class Counsel will continue to work through the final approval hearing, supervising the Settlement Administrator's distribution of the settlement, and answering the inquiries from class members, and non-class members, that always arise once checks start being distributed.

received supports an upward adjustment."); *Jarrell v. Amerigas Propane, Inc.,* No. 16-CV-01481-JST, 2018 WL 1640055, at *3 (N.D. Cal. Apr. 5, 2018) (noting "the fact that no class member has objected to the proposed award."). On the other hand, Class Counsel has received numerous calls expressing gratitude for the settlement. Werts Decl. at ¶82.

In sum, Class Counsel's request for a 25% common fund fee totaling $625,000 in this case is reasonable and should be approved.

## VIII.  Class Counsel's Expenses are Reasonable

Expense awards "should be limited to typical out-of-pocket expenses that are charged to a fee-paying client and should be reasonable and necessary." *In re Immune Response Sec. Litig.,* 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). Under the Settlement Agreement, Class Counsel agreed to seek no more than $125,000 in expenses. After auditing the expense register and exercising billing judgment to remove certain charges, Class Counsel seeks $118,160.55 in litigation expenses including for deposition transcripts and videos, expert witness fees, necessary travel, mediation services, and various other expenses for items such as legal research, postage, and filing fees. A summary table of these expenses is included in the attached Werts Decl. at ¶78. These expenses are recoverable. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorney may usually recover expenses normally be charged to a fee paying client). Moreover, the amount requested is less than the $125,000 the class was notified Class Counsel may request. Werts Decl. at ¶77. This fact further demonstrates the reasonability of the request. *See Zhu*, 2021 WL 871775 at *2.

## IX.    The single objection should be overruled.

One Class Member has objected to this settlement. Werts Decl. at ¶37; Dkt. No. 96. The objection is based on his belief that Walmart did not do anything wrong and that a $15 payment was "not substantial enough to effect a change in anyone's lives." Objection, Dkt. No. 96. . No legal basis for the objection was provided. *Id.* And here, the Court found in its summary judgment ruling that Plaintiffs' claims were potentially viable, refuting the objector's primary argument (Dkt. No. 77). Objections of this type are routinely

16

overruled. *See In re Banner Health Data Breach Litigation*, No. 2:16-cv-02696-SRB, 2020 WL 12574227, *5 (D. Ariz. Apr. 21, 2020) (collecting cases overruling objections based on thought that settlement could have provided better relief); *Burritt v. NutraCea*, CV-09-00406-PHX-FJM, 2010 WL 8759338, *1 (D. Ariz. Oct. 4, 2010) (overruling objection where "Plaintiffs' Counsel have achieved a fair and adequate Settlement providing a tangible benefit to Class Members.").

## X.    Conclusion

For the foregoing reasons, Plaintiffs respectfully requests the Court grant Final Approval of the Settlement and enter the accompanying proposed final approval order and judgment submitted herewith.

Plaintiff has lodged a proposed form of Order in compliance with LRCiv. 7.1(b)(2).[3] Walmart is not opposed to the Court's entry of this Order.

Dated: July 5, 2024                    **LEAR WERTS LLP**

By */s/ Todd C. Werts*
Todd C. Werts (St. Bar No. 035380)
103 Ripley Street
Columbia, MO 65201
Telephone: 573-875-1991
Facsimile: 573-279-0024
Email: werts@learwerts.com

*Attorneys for Plaintiffs Kathy Arrison and Tristan Smith*

---

[3] The proposed order is patterned after the order granting final approval in *Medina v. PracticeMax, Inc.*, Case No. CV-22-01261-PHX-DLR (Oct. 27, 2023) (Dkt. No. 45).