**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathy Arrison, et al., | No. CV-21-00481-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Walmart Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement Agreement.  (Doc. 100.)  The Court held a final fairness hearing on July 15, 2024.  After reviewing the Motion, the attached documents, and the relevant case law, the Court will grant the Motion.

## I.    BACKGROUND

This case is a wage and hour class action lawsuit covering approximately 81,000 employees who worked at Defendants' 112 locations in Arizona.  (*See* Doc. 26.)  Plaintiffs primarily alleged that Defendants failed to pay wages for time spent in COVID-19 screening and failed to keep accurate records of related work time.  (*Id.*)

After much litigation and a full day mediation, the parties reached a settlement. (Doc. 100 at 7.)  The Court granted preliminary approval of this settlement in February 2024.  (Doc. 95.)  Plaintiffs report that all but 1,942 members of the class received direct mail notice of the settlement—yielding notice to 97.6% of the class.  (Doc. 100 at 9.) Plaintiffs also note that there have been forty-eight opt-outs and one objection.  (*Id.*)  The

final fairness hearing was held on July 15, 2024 to determine whether the proposed settlement is fundamentally fair, adequate, and in the best interest of the class members. In advance of the hearing, Plaintiffs filed this Motion.

## II.   LEGAL STANDARD

Class actions require the approval of the district court before settlement.  Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval.").  The Ninth Circuit has declared a strong judicial policy that favors settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019).

Procedurally, this process moves forward in two steps.  The first step is preliminary approval.  During preliminary approval, the court conducts a preliminary fairness evaluation to determine if notice of the class action settlement should issue to class members and, if applicable, whether the proposed settlement class should be certified.  *See* David F. Herr, *Ann. Manual Complex Lit.* § 21.632 (4th ed. 2023).  The court looks to several factors to gauge fairness and adequacy, including:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citation omitted).  However, many of these factors cannot be fully assessed until the final fairness hearing, and therefore are weighed at the second step.  *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008).

Accordingly, at the preliminary approval stage, courts need only evaluate "whether the proposed settlement (1) appears to be the product of serious, informed, non-collusive negotiations, (2) has no obvious deficiency, (3) does not improperly grant preferential

treatment to class representatives or segments of the class and (4) falls within the range of possible approval." *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009) (cleaned up).  These factors dovetail with the considerations outlined in Rule 23(e).  *See* Fed. R. Civ. P. 23(e)(1)(B)(2).

The second step is the final approval.  During this stage, "[i]f the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  In doing so, the court must weigh several considerations along with the *Churchill* factors, including whether: "the class representatives and class counsel have adequately represented the class"; "the proposal was negotiated at arm's length"; "the proposal treats class members equitably relative to each other"; and "the relief provided for the class is adequate."  *Id.*  When considering whether "the relief provided for the class is adequate," the court should also consider:

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3).

*Id.*

At this juncture, the Court will analyze the *Churchill* factors and the above considerations of Rule 23(e) in making its final decision on the settlement.  Overall, the Court is cognizant that "[s]ettlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).

## III.   DISCUSSION

### A.  The Settlement Class

Plaintiffs first request the Court approve the settlement class.  (Doc. 100 at 10–12.) Final approval of a class action settlement requires, as a threshold matter, an assessment of

- 3 -

whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b).  *Hanlon*, 150 F.3d at 1019–22.  Here, the Court initially granted approval of this class in July 2023.  (Doc. 80.)  The Court also reaffirmed its approval of its order granting class certification in its preliminary approval of the settlement.  (Doc. 95.)

At this time, no facts that would affect these requirements have changed since these approvals.  Therefore, the Court need not reassess the relevant factors, and the Court incorporates its prior analysis under Rules 23(a) and (b).  *See Rodriguez v. QS Next Chapter LLC*, No. CV-20-00897-PHX-DJH, 2021 WL 1307612, at *1 (D. Ariz. Apr. 7, 2021); *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019).  Accordingly, the Court will grant final certification of the settlement class: All individuals who worked at a Walmart retail store in Arizona as a nonexempt store employee at any point during the class period of April 10, 2020 through February 28, 2022.  (*See* Doc. 95 at 1.)

### B.  Settlement Factors

As stated, the Ninth Circuit has directed district courts to weigh and evaluate the non-exhaustive *Churchill* factors before approving or rejecting a class action settlement.  *See Juvera v. Salcido*, No. CV-11-2119-PHX-LOA, 2013 WL 6628039, at *11 (D. Ariz. Dec. 17, 2013).  The Court will now analyze each *Churchill* factor in turn.

#### 1.  *The Strength of Plaintiffs' Case*

Plaintiffs alleged straightforward claims regarding failure to pay wages and record keeping, and those claims were almost fully preserved through a motion to dismiss and a motion for summary judgment.  (*See* Doc. 33; Doc. 78.)  Moreover, this settlement came after a contested motion for class certification, which the Court granted.  (Doc. 80.)  Overall, Plaintiffs were in a strong position to proceed to trial.  This position also speaks to adequate representation by class counsel.  Fed. R. Civ. P. 23(e)(2).  In short, Plaintiffs entered settlement negotiations from a strong position, and were able to negotiate a fair and adequate settlement for the class.  This factor weighs in favor of approval.

#### 2.  *The Risk, Expense, Complexity, and Likely Duration of Further Litigation*

This case has been pending for over three years.  (*See* Doc. 1.)  At this point, the

parties have completed discovery, fully litigated class certification and summary judgment, and reached a settlement. (Doc. 100 at 7.) Therefore, further litigation would likely consist of pre-trial motions and trial. This would significantly add to the time and financial expenses of this case. Additionally, the risk of trial and any subsequent appeals is high. The current settlement provides a resolution and compensation to the class. Accordingly, this factor also weighs in favor of approval.

### 3. *The Risk of Maintaining Class Action Status Throughout the Trial*

The class was initially approved in July 2023. (Doc. 80.) Although Defendants appealed the certification to the Ninth Circuit, the appeal was stayed by joint motion pending approval of this settlement. (Doc. 100-1 at 6 ¶ 24.) If this case were to proceed to trial, that stay would likely be lifted and ultimately impact the case's resolution. This creates some risk of maintaining class action status throughout trial. Because this settlement puts this issue to rest, it weighs in favor of approval.

### 4. *The Amount Offered in Settlement*

The settlement agreement provides for an amount of $2,500,000. (Doc. 100 at 7.) This amount reflects "an average recovery of approximately 50% of each plaintiffs' potential post-summary judgment claim." (*Id.*) The settlement fund will be distributed to class members based on the number of weeks they worked during the class period. (*Id.* at 9.) Moreover, no funds will revert to Defendants. (*Id.*) Instead, any remaining funds will be redistributed to class members. (*Id.*)

This amount, and its relevant terms, were negotiated at arm's length after extensive litigation. Moreover, this amount was reached after all parties knew the relative strengths and weaknesses of their respective case. Class counsel refers to the recovery as "substantial" and the Court agrees—particularly considering the percentage of recovery in similar cases within this circuit. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving a settlement of roughly 16% of the potential recovery); *Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, No. 19-CV-06088-LB, 2020 WL 5074392, at *6 (N.D. Cal. Aug. 27, 2020) (approving a settlement of roughly 7% of the potential recovery);

*Rosales v. El Rancho Farms*, No. 1:12-CV-01934-AWI-JLT, 2015 WL 4460918, at *14 (E.D. Cal. July 21, 2015) (approving a settlement of roughly 25% of the potential recovery); *Rojas v. Zaninovich*, No. 1:09-CV-0705-AWI-JLT, 2015 WL 3657172, at *12 (E.D. Cal. June 11, 2015) (approving a settlement of roughly 50% of the potential recovery).

In short, settlement amount provides adequate relief for the class and treats class members equitably. *See* Fed. R. Civ. P. 23(e)(2). This factor weighs in favor of approval.

### 5. *The Extent of Discovery Completed and the Stage of the Proceedings*

As previously mentioned, this case settled after discovery was completed. On one hand, this ensures that the attorneys' fees and costs will be high given the hours expended on the case. On the other hand, it shows that this settlement came after the parties were well-aware of their respective positions in the case as they headed towards trial. For the sake of approval, this latter consideration is more important, as it speaks to the fairness and adequacy of the settlement. This factor therefore also weighs in favor of approval.

### 6. *The Experience and Views of Counsel*

Class counsel is experienced in litigating wage and hour claims. (*See* Doc. 100-1 at 20–26.) Their experience allowed them to successfully litigate this technical case, which involved significant data-mining and statistical analysis. (Doc. 100 at 18.) In short, class counsel's work on this case was extensive and complex. As a result, they concluded the case with a favorable settlement, which in their view reflects a fair and adequate result for the class members. The Court agrees, and this factor also weighs in favor of approval.

### 7. *The Presence of a Governmental Participant*

There is no governmental participant in this case. Therefore, this factor is not applicable.

### 8. *The Reaction of the Class Members to the Proposed Settlement*

During the notice process, 81,578 notices were sent out. (Doc. 100-1 at 8 ¶ 33.) Of those notices, 13,698 were returned, but 11,756 of those returned notices were successfully remailed. (*Id.* ¶ 34.) Accordingly, all but 1,942 members of the class received direct mail

1    notice of the settlement.  (*Id.* ¶ 35.)  Overall, this yielded notice to 97.6% of the class.  (*Id.*
2    ¶ 36.)

3           After the notice period, class counsel received forty-eight requests for exclusion and
4    one objection.  (*Id.* ¶ 37.)  Two class members also disputed the number of pay periods
5    they were shown to have worked during the class period.  (Doc. 100-1 at 8 ¶ 37.)  The
6    settlement administrator is "working with those class members to resolve the issues." (*Id.*)
7    The objection was filed by class member Timothy Michael Van Hoesen and centers on his
8    feeling that he "can't rightly sue a company for something they didn't do" and that "$15
9    per class member is not substantial enough to effect a change in anyone's lives." (Doc.
10   96.)  However, this single objection does not rest on any substantive grounds.  It also does
11   not provide an objection to either the fees or costs awarded to class counsel.  Objections of
12   this nature—which merely seek different or "better" settlement terms—are routinely
13   overruled.  *See In re Banner Health Data Breach Litig.*, Case No. 2:16-cv-02696-SRB,
14   2020 WL 12574227, at *5 (D. Ariz. Apr. 21, 2020) (collecting cases).  Accordingly, Van
15   Hoesen's objection will be overruled.  Taken together, the reaction of the class members
16   to the settlement weighs in favor of approval.

17          **C. Attorneys' Fees and Costs**

18          The settlement agreement also provides for attorneys' fees of $625,000 and
19   $118,160.55 in costs.  (*See* Doc. 100.)  When considering an attorneys' fee award, the
20   Court maintains "an independent obligation to ensure that the award, like the settlement
21   itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*
22   *Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  Moreover, the Supreme
23   Court has explained, "[a] request for attorney's fees should not result in a second major
24   litigation.  Ideally, of course, litigants will settle the amount of a fee." *Hensley v.*
25   *Eckerhart*, 461 U.S. 424, 437 (1983).

26          "The Ninth Circuit has instructed that because the amount of fees is often open to
27   dispute and because the parties are compromising to avoid further disputes, the district
28   court need not inquire into the reasonableness of fees with the same level of scrutiny as

when the amount of fees is litigated." *Wood v. Ionatron, Inc.*, No. CV 06-354-TUC-CKJ, 2009 WL 10673479, at \*5 (D. Ariz. Sept. 28, 2009) (citing *Staton v. Boeing*, 327 F.3d 938, 966).

There are two primary methods of calculating fees—the percentage or lodestar method. *See Hanlon*, 150 F.3d at 1029. The primary basis remains the percentage approach in which class counsel receives a set percentage from the class common fund. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). The benchmark fee award in class common fund cases is "25 percent of the recovery obtained, with 20–30% as the usual range." *Vizcaino*, 290 F.3d at 1047 (cleaned up); *see also Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). The lodestar method computes attorneys' fees by multiplying the number of hours reasonably spent on the case by a reasonable hourly rate. When the Court employs a percentage, it can use the lodestar method as a "cross-check" to ensure the reasonableness of the percentage award. *Vizcaino*, 290 F.3d at 1050.

Here, the settlement agreement applies the Ninth Circuit's 25% benchmark percentage to the common class fund, resulting in a fee of $625,000 for class counsel. Under the relevant precedent, this figure is objectively reasonable. The Court also notes that the parties reached an agreement on the fee award following an arm's-length negotiation. Further, no class members objected to this fee.

Applying the lodestar method leads to the same conclusion. Here, class counsel spent over 1,300 hours litigating this case. Assuming class counsel's stated rates, the lodestar comes to $874,770.50. *See also Covillo v. Specialtys Café*, No. C-11-00594-DMR, 2014 WL 954516, at \*6 (N.D. Cal. Mar. 6, 2014) (noting that courts may rely on billing summaries submitted by attorneys). The Court finds that the hours and rates used to generate the overall lodestar figure are reasonable. This figure is higher than the percentage figure—specifically, it is a negative multiplier of 0.71 from the lodestar. This provides an additional marker of reasonableness. *See, e.g.*, *Corker v. Costco Wholesale*

*Corp.*, No. 2:19-CV-00290-RSL, 2021 WL 2790518, at *2 (W.D. Wash. June 25, 2021) (reasoning that the negative multiplier "confirms the reasonableness of the requested fee"); *Sanchez v. Frito-Lay, Inc.*, No. 1:14-cv-00797-DAD-BAM, 2021 WL 1813190, at *9 (E.D. Cal. May 6, 2021) (approving a percentage award with a negative multiplier on the lodestar cross-check).

Under the agreement, class counsel agreed to seek no more than $125,000 in expenses.  (Doc. 100 at 22.)  This amount was also provided in the notice to class members. Class counsel now requests $118,160.55—slightly less than their original figure.  This amount covers litigation expenses, including "deposition transcripts and videos, expert witness fees, necessary travel, mediation services, and various other expenses for items such as legal research, postage, and filing fees."  (*Id.*)  These types of expenses are reimbursable.  *See In re Capacitors Antitrust Litig.*, No. 3:140-CV-03264-JD, 2018 WL 47906575, at *6 (N.D. Cal. Sept. 21, 2018).  The Court also notes that no class member objected to this figure and that the parties also agreed on this amount after an arm's-length negotiation.

In sum, the Court finds the amounts for attorneys' fees and costs in the settlement agreement are reasonable.

### D. Service Awards and Settlement Administration

Next, the Court considers the proposed service awards.  Service awards are "intended to compensate class representatives for work undertaken on behalf of a class" and "are fairly typical in class action cases."  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (cleaned up).  The Court must evaluate the named plaintiffs' requested service awards and any other service awards by evaluating "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation."  *Staton*, 327 F.3d at  977; *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) ("Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for

financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.").

Here, the settlement agreement awards $5,000 service awards to each named Plaintiff, for a total of $10,000. (Doc. 100 at 9.) Like the percentage award for the attorneys' fees, the requested service awards fall within Ninth Circuit guidelines. *See Congdon v. Uber Techs. Inc.*, Case No. 16-cv-02499-YGR, 2019 WL 2327922, at *9 (N.D. Cal. May 31, 2019) (collecting cases and concluding "[t]he Ninth Circuit has repeatedly held that $5,000 is a reasonable amount for an incentive award"). The Court follows this guidance. Moreover, the Court notes that the two named plaintiffs in this case worked closely with class counsel, answered written discovery, sat for depositions, and meaningfully participated throughout the case. Their compensation for this work is consistent with other approved service awards. Accordingly, the Court will approve a $5,000 service award for each named plaintiff.

Similarly, the settlement agreement calls for the settlement administrator, Simpluris, to be paid $207,478. (Doc. 100-1 at 10 ¶ 48.) Simpluris has agreed that its work in this case will not exceed this amount. (*Id.*) If their work costs less than this amount, the excess funds will be paid to class members. (*Id.*) This amount was also contained in the class notice, and no class member objected to it. Moreover, the parties agreed upon this amount in their arm's-length negotiations. The Court finds this amount reasonable.

In weighing these factors, and pursuant to the requirements of Rule 23(e), the Court finds the settlement agreement is "fundamentally fair, adequate, and reasonable." *Staton*, 327 F.3d at 959. The Court will approve the settlement agreement.

## IV.   CONCLUSION

For the above reasons,

**IT IS HEREBY ORDERED granting** Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement Agreement (Doc. 100).

**IT IS FURTHER ORDERED** certifying the following class for settlement purposes under Federal Rule of Civil Procedure 23(a) and (b), subject to the class

exclusions set forth in the settlement agreement: All individuals who worked at a Walmart retail store in Arizona as a nonexempt store employee at any point during the class period of April 10, 2020 through February 28, 2022.

**IT IS FURTHER ORDERED** as follows:

1. The Court, for purposes of this final judgment, adopts the defined terms as set forth in the settlement agreement for any term not otherwise defined herein.

2. The Court finds that the settlement agreement is fair, reasonable, and adequate, as expressed further herein. The Court also finds the settlement agreement was entered into in good faith, at arm's length, and without collusion. The Court approves and directs consummation of the settlement agreement.

3. The Court approves the Release of Class Claims provided in paragraph 21 and Release of Additional Claims and Rights by Plaintiffs in paragraph 22 of the settlement agreement and orders that, as of the effective date, the released claims will be released as to released parties.

4. The Court has and reserves jurisdiction over the settlement and this settlement agreement, and for purposes of the settlement and settlement agreement, the Court has and reserves jurisdiction over the parties to the settlement.

5. The Court finds that there is no just reason for delay of entry of final judgment with respect to the foregoing.

6. The Court dismisses with prejudice all claims of the class against Walmart in the litigation, without costs and fees except as explicitly provided for in the settlement agreement.

7. The Court grants Plaintiffs' request for attorneys' fees, litigation expenses, and plaintiffs' service awards. The Court awards class counsel $625,000 in attorneys' fees and reimbursement of $118,160.55 in litigation expenses, to be paid according to the terms of the settlement agreement. This amount of fees and reimbursement of expenses is fair and reasonable. The Court awards each named Plaintiff a service award of $5,000, for a total of $10,000.

8. On February 16, 2024, the Court entered an Order granting preliminary approval of the class action settlement (Doc. 95) that preliminarily approved the settlement agreement and established a hearing date to consider the final approval of the settlement agreement and class counsel's Motion for Attorneys' Fees and Litigation Expenses.

9. The Court's preliminary approval Order approved the notice form, and found the mailing, distribution, and publishing of the notice as proposed met the requirements of Federal Rule of Civil Procedure 23 and due process, and was the best notice practicable under the circumstances, constituting due and sufficient notice to all persons entitled to notice.

10. The Court finds that the distribution of the notices has been achieved pursuant to the preliminary approval Order and the settlement agreement, and that the notice to class members complied with Federal Rule of Civil Procedure 23 and due process.

11. The Court finds Walmart has complied with the requirements of 28 U.S.C. § 1715 regarding the CAFA Notice.

12. The Court grants final approval to its appointment of Kathy Arrison and Tristan Smith as the class representatives of the class.  The Court finds for settlement purposes that the class representatives are similarly situated to absent class members, are typical of the class, and are adequate class representatives, and that class counsel and the class Representatives have fairly and adequately represented the class.

13. The Court grants final approval to its appointment of class counsel as provided in the preliminary approval Order, appointing Todd C. Werts of Lear Werts LLP.

14. The Court, having considered the negotiation of, the terms of, and all of the materials submitted concerning the settlement agreement; having considered Plaintiffs' and the class's likelihood of success both of maintaining this action as a class action and of prevailing on the claims at trial, including the possibility that Walmart could prevail on one or more of its defenses; having considered the range of the Plaintiffs' possible recovery (and that of the class) and the complexity, expense, and duration of the litigation; and having considered the substance and amount of opposition to the proposed settlement, it is

hereby determined that:

    a.  Plaintiffs and class counsel have adequately represented the proposed class;

    b.  the terms of the settlement agreement were negotiated at arm's length, vigorously advocated by experienced counsel for Plaintiffs and Walmart;

    c.  the outcome of the litigation was in doubt when the Settlement was reached making the compromise under this settlement reasonable under the circumstances;

    d.  it is possible the proposed class could receive more if the litigation were to proceed to trial, but it is also possible that the proposed Class could receive less (including the possibility of receiving nothing) and/or that Walmart could defeat class certification;

    e.  the value of immediate recovery outweighs the possibility of future relief that would likely occur, if at all, only after further protracted litigation and appeals;

    f.  the parties have in good faith determined the settlement agreement is in their respective best interests, including both Plaintiff and class counsel determining that it is in the best interest of the class members;

    g.  the aggregate consideration for the class—including the settlement fund, which Walmart shall cause to be funded—is commensurate with the claims asserted and being released as part of the settlement; and,

    h.  the terms of the settlement agreement treat the class members equitably relative to each other and fall within the range of settlement terms that would be considered a fair, reasonable, and adequate resolution of the litigation.

Therefore, pursuant to Rule 23(e), the terms of the settlement agreement are approved as fair, reasonable, and adequate as to, and in the best interest of, the class and each of the class members.

15. The objection of Timothy Michael Van Hoesen is overruled.

16. Class members who did not opt-out of the settlement are bound by this Order.

17. The settlement agreement and its terms shall have res judicata and preclusive

1  effect in all pending and future lawsuits or other proceedings as to released claims and

2  waivers applicable thereto.

3  18. The Court approves the distribution and allocation of the settlement fund under

4  the settlement agreement pursuant to the terms of the settlement agreement.

5  19. This Order, and all statements, documents, or proceedings relating to the

6  settlement agreement are not, and shall not be construed as, used as, or deemed to be

7  evidence of, an admission by or against Walmart of any claim, any fact alleged in the

8  litigation, any fault, any wrongdoing, any violation of law, or any liability of any kind on

9  the part of Walmart or of the validity or certifiability for this litigation or other litigation

10  of any claims or class that have been, or could have been, asserted in the litigation.

11  20. This Order, and all statements, documents or proceedings relating to the

12  settlement agreement shall not be offered or received or be admissible in evidence in any

13  action or proceeding or be used in any way as an admission or concession or evidence of

14  any liability or wrongdoing by Walmart.  Notwithstanding the above, the settlement

15  agreement and this Order may be filed in any action by Walmart, class counsel, or class

16  members seeking to enforce the settlement agreement or this Order.

17  21. The settlement agreement and this Order shall not be construed or admissible as

18  an admission by Walmart that Plaintiffs' claims or any similar claims are suitable for class

19  treatment.

20  **IT IS FURTHER ORDERED** directing the Clerk of Court to close this case.

21  Dated this 15th day of July, 2024.

Honorable Susan M. Brnovich
United States District Judge